THOMAS JACKSON ET AL., APPELLANTS, VS. JAMES T. MAGBEE, ET AL., APPELLEES.

1. The reformation of written instruments, when by mistake they express more or less than the parties intended, is a well established branch of equity jurisdiction.

2. If the proof is not full and satisfactory, and the mistake plain, equity will not interfere; for the writing should be deemed the sole expositor of the intent of the parties, until the contrary is established beyond reasonable controversy.

3. When a bill for the reformation of the calls in a deed alleges that said deed contains calls for land which the grantor intended to convey, as well as calls for land which he never intended to convey, a plea setting forth that the grantor was the grantee's tenant of a *part of the land* described in said deed, and paid rent therefor, is a bad plea and should be overruled.

4. Where a deed describes the land conveyed by well defined metes and bounds, and states the number of acres contained therein, the more certain description by boundaries must govern the construction of the call; and both grantor and grantee, in the absence of fraud, take the risk as to the quantity of the land.

Appeal from the Circuit Court for Hillsborough county.

The facts of the case are stated in the opinion.

*Finley & Phillips* for Appellants.

*H. C. Macfarland* and *Hammond & Johnson* for Appellees.

THE CHIEF-JUSTICE delivered the opinion of the court:

Thomas Jackson and Ellen Jackson filed their bill in the Circuit Court of Hillsborough county against James T. Magbee, Julia A. Magbee and Bartholomew C. Leonardy. The bill alleges that Thomas Jackson was the owner by purchase from the United States of Lot No. 5, in section B, township 29, south, range 18, east, and had a patent therefor. That said lot is said in said patent to contain 53 acres. That on the 25th of August, 1870, the said Thomas Jackson and his wife, Ellen Jackson, conveyed by deed to the heirs of one Mobley 43 acres in the northern end of said lot 5. That on the 27th day of April, A. D. 1871, said Jackson and wife made a conveyance to one Leonardy of another portion of said lot, which portion was estimated by said Jackson and said Leonardy at 8 acres. That before the delivery of the deed to Leonardy, Jackson had the portion bargained to Leonardy surveyed and found that it contained eight and three-fourths acres. That for the purpose of conveying the additional three-fourths of an acre that the land sold to Leonardy was described in the deed as being the "entire southern portion of said lot, except two acres in the southeast corner of said lot containing, exclusive of said exception, eight acres of land." That orator Jackson did not sell to said Leonardy any more than 8¾ acres. That at the time of said sale he was under the belief that said lot 5 only contained 53 acres, that as he had sold to Mobley's heirs 43 acres that he had only two acres unsold. That orator is wholly illiterate and unlearned, being a man of color and having been born a slave. That afterwards on a survey of said lot 5 it was ascertained to

contain 60 acres of land.   That after the sale of said 8¾ acres to said Leonardy he, the said Leonardy, had the same surveyed and laid off into streets, blocks and lots and a map thereof made.   That said map shows with accuracy and precision the land sold by your orator to said Leonardy. That said land adjoins the growing city of Tampa and is very valuable.   That on the 30th day of August, 1874, said Leonardy conveyed to James T. Magbee the said portion of land sold by your orator to said Leonardy except certain portions thereof which are not of importance to a proper understanding of this case.   That said Magbee, along with his deed, had the map so made by Leonardy recorded in the record books of Hillsborough county.

That said Magbee had both constructive and actual notice that your orator only intended to convey to Leonardy that portion of said lot 5 which said Leonardy had surveyed and plotted.

That before the sale by Leonardy to Magbee that Leonardy showed to Magbee the aforesaid map or plot of said land, showing exactly what he had purchased from your orator.   That said Magbee had, after his purchase from Leonardy, employed hands and cut ditches around the land which he purchased from said Leonardy in accordance with the survey and plot of Leonardy.   That your orator is in actual possession of that portion of said lot 5 not sold to Leonardy.

The bill prays that the patent to orator, the deed from orator to Mobley's heirs, the deed from orator to Leonardy, and the deed from Leonardy to Magbee, all of which are attached thereto as exhibits, may be taken and considered as parts thereof.   The language used in the deed from orator to Mobley's heirs describing the land sold is as follows: " All that certain portion or tract of land lying and being in county of Hillsborough, State of Florida, in forty-three

acres out of the north end of lot 5, sec. 13, T. 29, S., R. 18, E. The south line of said forty-three acres of land to run parallel with the north line of said lot, leaving ten acres in the southern part to said Jackson."

The language used in the deed from orator Leonardy, describing the land sold, is as follows: "All that certain tract or parcel of land lying and being in lot 5, sec. 13, T. 29, S., R. 18, E., and bounded north by an east and west line, the southern boundary line of that portion of said lot sold and conveyed by the said parties of the first part to the infant heirs of C. R. Mobley, and which includes the entire southern portion of said lot, except two acres in the southeast corner of said lot, said lot containing, exclusive of said exception, eight acres of land situate near Tampa, in the county of Hillsborough, State of Florida."

The bill, though somewhat vaguely, prays for a reformation of said deed so as to express the true amount of land intended to be conveyed, and that the said Magbee may be restrained and enjoined from laying claim to or in any wise exercising ownership over any part of said Lot No. 5, except such as he purchased from Leonardy, as included in his, Leonardy's, survey and plot.

To this bill the defendant, Julia A. Magbee, demurred for want of equity.

The defendant, James T. Magbee, filed a plea setting forth that orator was not entitled to relief prayed because he was the tenant of said Magbee of a part of the land mentioned in Exhibit D, and paid rent therefor in labor.

The Circuit Judge dismissed the bill and appellants appealed to this court.

The record does not show whether the plea was allowed or overruled.

After the filing of the bill by the appellants, Magbee

brought an action of ejectment against Thomas Jackson, whereupon the said Jackson filed what he termed a supplemental bill to restrain " said Magbee from the further prosecution of said suit until the cause is settled," which was granted by the Chancellor and the injunction issued. To this bill the defendant, Julia A. Magbee, demurred for want of equity, and the said James T. Magbee filed two pleas thereto, one setting forth the statute of limitation, the other setting forth the same fact as his plea to the original bill, to-wit: that said Jackson was his tenant of a part of the land mentioned in exhibit D, and paid rent therefor in labor.

The leading question in this case is, does the bill present such a state of facts which, if true, and by the interposition of a demurrer their truth so far as this inquiry is concerned is admitted, would justify a court of equity in reforming the deed and granting the relief sought. Mistakes are of two kinds—mistakes in law and mistakes of fact. Mistakes of the former class are not generally considered good ground for relief from the grievance their committing may have induced. 1 Story Eq. Jurisprudence, secs. 110–111, applying the maxium of *ignorantia legis neminem excusat.*

Considerations of justice and fair dealing have uniformly influenced courts of equity to relieve an individual from the consequences of a written instrument which are prejudicial to him, and which, by a mistake, does not contain the true intention of the parties, and prevent the party in whose favor such mistake is made from deriving any advantage from that part of said instrument which was unintended by the parties.

" Courts of Equity have not hesitated to entertain jurisdiction to reform all contracts where a fraudulent omission or insertion of a material stipulation exists, notwithstand-

ing to some extent it breaks in upon the uniformity of the rule as to the exclusion of parol evidence to vary or control contracts, wisely deeming such cases to be a proper exception to the rule and proving its general soundness;" again, "it is upon the same ground that equity interferes in the case of an *innocent* omission or insertion of a material stipulation, contrary to the intention of both parties and under a mutual mistake. To allow it to prevail in such a case would work a surprise or fraud on both parties, and certainly upon the one who is the sufferer."

"We must therefore treat the cases in which equity affords relief and allows parol evidence to vary and reform written contracts and instruments upon the ground of accident and mistake, as properly forming like cases of fraud, exceptions to the general rule which exclude parol evidence, and as standing upon the same policy as the rule itself." Story Eq. Jur., vol. 1, secs. 155–156, (eleventh edition); Stone vs. Hale, 17 Ala., 557; Gillespie vs. Moore, 2 John. Ch. R., 596. The allegations in the bill clearly bring the appellants within the operation of this rule.

That it was their intention only to sell and the intention of Leonardy to buy only a certain number of acres of land; that Leonardy had the tract which both parties understood to be the tract and quantity sold by Jackson surveyed and a map thereof made; that Magbee had actual notice of the amount of the land sold and its boundaries by said map—if these statements are true and there are no countervailing equities arising from the transaction, the appellants are entitled to the relief prayed for.

The authorities are agreed that relief under such circumstances will only be granted in cases of written instruments, when there is a plain mistake clearly made out by satisfactory proof. It should not be granted where the evidence is loose, contradictory or equivocal. A mere preponder-

ance of evidence would hardly come up to the requirements of the rule. It should only be granted on full proof. Without such proof the written instrument must be taken to correctly state the agreement of the parties. It should be made to appear satisfactorily that the parties in their final instrument intended only to carry out their preliminary verbal agreement. Story Eq. Jur., vol. 1, sec. 157 *et seq.*, and authorities cited.

The authorities cited by the counsel for appellees undoubtedly assert the correct principle, that the metes and bounds of land are the most certain description, that the most certain description must prevail, and that both parties take a risk as to the quantity of land contained within the metes and bounds mentioned in the deed.

But we do not understand this case to be one of construction of the calls in the deed, but rather that these calls are the result of a mutual mistake of the parties and do not express the agreement of sale which was actually made by them. We think the court erred in sustaining the demurrer to the bill. The plea to the original bill should have been overruled. It says that Jackson was the tenant of said Magbee, of a part of the land mentioned in Exhibit D. This is not inconsistent with the allegations in the bill. The bill alleges that the description of land in Exhibit D. contained land which he never intended to sell, as well as land which it was his intention to sell. The plea does not state whether Jackson was a tenant of the disputed or undisputed part of the land mentioned. If he was a tenant of Magbee of the part of land mentioned in Exhibit D., which he now claims by his bill that he never intended to sell, and paid rent therefor, it would so strongly support the theory that the deed contained the true description of the land sold that proof of the fact would overcome the case made by the bill. If, however, the part of said lot that he oc-

cupied and paid rent for was a part that he admitted in the bill that he had sold, it was of no legal consequence.

What is said as to this plea is equally applicable to Magbee's first plea to the bill for injunction. The record does not show the action of the court as to the plea to the bill filed for injunction, that the defendant, Magbee, had held quiet possession since the year 1874.

This plea, lacking so many of the requirements of the Statute of Limitations, McClellan's Digest, p. 731, should have been overruled.

Decree reversed and case remanded.