HENRY F. JACOBS AS ADMINISTRATOR OF J. H. DICKERSON, DECEASED, APPELLANT, v. G. PARODI AND ESTHER PARODI, HIS WIFE, APPELLEES.

1. Where an agreement has been actually entered into, but the contract, deed or other instrument, in its written form, does not express what was really intended by the parties thereto, equity has jurisdiction to reform the written instrument so as to make it conform to the intention, agreement and understanding of all the parties.

2. If a written contract is ambiguous or obscure in its terms so that the contractual intention of the parties cannot be understood from a mere inspection of the instrument, extrinsic evidence of the subject-matter of the contract, of the relations of the parties to each other, and of the facts and circumstances surrounding them when they entered into the contract, may be received to enable the court to make a proper interpretation of the instrument.

3. Where a deed conveying title to land and reserving to the grantor the timber thereon to be removed one half in five years and the other half in ten years, also contains a

covenant that the grantor "will cut the pine trees off of such parts of the said lands required by the" grantee "for improvements," and it is not made clear by the deed how much of said land was agreed upon as required for such improvements, a court of equity has the power upon proper allegations and proof to reform the deed so as to make it express the real agreement of the parties as entered into by them.

4. Where a bill for the reformation of a written instrument sufficiently states the agreement of the parties, and alleges the mistake of the scrivener in omitting to fully or sufficiently set forth the agreement in the written instrument, and alleges that the complainants executed the instrument in the belief that it did amply set forth the agreement of the parties when in reality it does not fully contain such agreement, and states the injury to the complainants, and no negligence of the complainants is shown, a demurrer to the bill, on the ground that it is without equity, is properly overruled.

5. While equity will reform a written instrument when by a mistake it does not contain the true agreement of the parties yet it will only do so when the mistake is plain and the proof full and satisfactory. The writing should be deemed to be the sole expositor of the intent of the parties until the contrary is established beyond reasonable controversy.

6. In construing the different provisions of a contract all must be so construed, if it can reasonably be done, as to give effect to each. If one interpretation, looking to the other provisions of the contract and to its general scope, would lead to an absurd conclusion, such interpretation must be abandoned and that adopted which will be more consistent with reason and probability.

7. The testimony taken in connection with the provisions of the instrument sought to be reformed makes a proper showing for relief by reformation.

8. It is the duty of counsel to present the exceptions taken to testimony to the chancellor, and to ask his rulings thereon at or before the final hearing; and where the request

for such rulings is made for the first time in a petition for rehearing, the chancellor may for that reason alone refuse to enter his rulings.

This case was decided by Division A.

Appeal from Circuit Court for Santa Rosa County.

STATEMENT.

The appellees filed a bill in the Circuit Court for Santa Rosa County for the reformation of an instrument in writing and for an injunction to restrain the defendant from prosecuting a suit at law for damages under said instrument in writing.

The instrument sought to be reformed is a deed of conveyance made by G. Parodi and wife to J. H. Dickerson covering about twenty-two hundred acres of land in Santa Rosa County, Florida. The deed also contains the following provisions: "The parties of the first part reserve from this conveyance, all the pine trees and wood now upon the said land, and the right to box the same for turpentine purposes, and the right to enter upon, pass over, across and through the said land with men, animals, carts and vehicles, for the purpose of working the said trees and woods on said land, and removing the turpentine therefrom, and also for the purpose of cutting and removing the said pine trees and other woods or any part thereof.

"The reservation herein, shall apply to one-half of the above described lands for a period of five years from the date hereof, which one-half is to be selected by the parties of the first part, and the other half for the period of ten years from the date hereof, and at the expiration of

these respective periods, all the rights reserved herein by the said parties of the first part shall terminate.

"The parties of the first part hereby grant to the party of the second part, his heirs and assigns from the date hereof, the right to use such wood from the above described lands as may be necessary for fuel and domestic purposes for his own uses, on the said lands, also all the pine trees less than ten inches diameter at three feet from the ground after having been worked for turpentine purposes.

"The parties of the first part covenant and agree with the party of the second part that whenever the party of the second part shall require any part of the said lands for improvements, that the parties of the first part will cut the pine trees off of such parts of the said lands required by the party of the second part for improvements and remove the tops of same, conditioned upon the party of the second part paying the parties of the first part three cents per cubic foot for all logs so cut, such logs then to be the property of the party of the second part. Wood to be taken off clean as gone over."

The complainants allege in their bill, in substance, that the complainant G. Parodi, with other persons as partners under the name of Parodi & Co., were and are engaged in the business of manufacturing pitch pine lumber; that G. Parodi bought the land mentioned in the deed in his own name for said firm for the purpose of using the timber thereon to be manufactured as aforesaid; that "the defendant, knowing the purposes for which said lands had been purchased and were then held by the complainant, G. Parodi, negotiated with the said complainant a proposition to buy the land from the said complainant, leaving to the latter the wood and logs thereon and the privilege of cutting the same, and proposing to agree to

a reasonable time in which the said firm should get the said wood and logs off and stating that he desired to reside on a part of the said land and have the remainder for a cattle range which would not interfere with the ownership of the complainant, G. Parodi, in and to all trees on said land and his right to remove the same whenever he saw fit within reasonable limits of time, except to a small portion of said land which the defendant would desire to have cleared and upon which he would erect a residence and which he would improve in the way and to the extent usual with country residences in said county; that complainant, G. Parodi, was willing to sell upon the general terms just stated whereby the firm would retain practically all the logs upon the land, and deliver to defendant the full use and ownership thereof, with the exception of the residence and its incident improvements, only after the said firm had had ample opportunity to turpentine and remove the pitch pine trees and the wood therefrom; the complainant, G. Parodi, stated to the defendant that he, complainant, would not consent to cut or sell the trees from, or to clear any large portion of the land, but that he would be willing to contract as requested by complainant as just hereinabove set forth; that accordingly a contract was made between complainant, G. Parodi, and defendant that said complainant and wife would execute and deliver to defendant a deed conveying to defendant title to said land, but reserving to the complainant the wood and trees thereon with exceptions not necessary to be herein set forth, but that defendant might at any time he desired erect a small residence upon any part thereof and clear and improve a small portion of the land about said residence for the purposes usually incident to such a residence in said coun-

35 S. C.

try, to-wit: for a house yard, garden for the raising of produce for himself and family and a small pasture for cows or horses used by him for domestic purposes, and that the complainant, G. Parodi, should, at the defendant's request, clear (by cutting the pine trees therefrom and removing the tops of same, clearing the wood therefrom as the clearing was done) the land required by defendant, but that the defendant without compensation by the defendant, but that defendant should take and pay for all the saw logs cut in such clearing the sum of three cents per cubic foot;" that in accordance with said contract, the complainant and his wife proceeded to cause to be drafted a deed to convey the said land and to embrace the contract hereinbefore mentioned, as well as other agreements and stipulations and reservations which it is unnecessary to set forth, and the clerk employed to draw the said instrument drafted, and the complainant and his wife executed, a deed and agreement, a copy of which is attached to and made a part of the bill; that the said instrument contained the stipulations, reservations and covenants agreed upon by the complainants and defendant, except that it does not define as did the contract made between the complainant, G. Parodi and the defendant, the nature and extent of the improvements to which the defendant might require the land to be cleared as aforesaid by the complainant; that the draftsman of said contract although aware of the agreement hereinbefore set forth, omitted by mistake to specify the nature and extent of the said improvements, but as appears by said deed inserted in said instrument, and stipulations therein contained that whenever the defendant should require any part of the said land for improvements, the complainants should clear the same by cutting the pine trees therefrom, etc., as therein set forth; that complain-

ants executed the said instrument in the belief that it amply set forth the contract as aforesaid and that the improvements therein mentioned meant the improvements contracted about by them as aforesaid; that shortly after the execution and delivery of the deed the defendant announced to the complainant, G. Parodi, that he was prepared to have complainant carry out his contract to clear the land required to be cleared under complainant's obligation contained in the contract, and designated to complainant a parcel of land containing about sixty acres and said to complainant that that was the land which he required to be cleared under the contract; that defendant "proposed, however, that instead of complainant's clearing it and charging him with the contract price per foot for the timber cut therefrom he, defendant, should clear it and at his own expense take all the timber and wood thereon and pay the complainant therefor the sum of twenty-five dollars. This arrangement was made and the money paid and the complainants believing that their obligation as to said clearing had been fulfilled dismissed the matter from their minds;" that thereafter the defendant in writing required the complainant to take and remove the timber and wood from about five hundred acres of said land, or about one-fifth of the whole; that complainants declined to comply, and suit has been brought by defendant claiming damages of complainant for an alleged breach of said contract; that the enforcement of the contract as now construed by the defendant would cause the complainant great losses which are fully set out in the bill. The oath to the answer was expressly waived in the bill.

The bill of complaint was demurred to on the grounds that it was without equity; that complainants have adequate remedy at law; and that complainant had been

guilty of such gross negligence as not to entitle them to any relief in a court of equity.

The demurrer was overruled and the defendant answered. Subsequent to this the defendant died and his administrator was by order of the court made party defendant.

An answer filed for the defendant administrator denies the material allegations of the bill and avers, in brief, that he was not advised of the purposes for which the complainant bought the lands in question; that the complainant, G. Parodi, and his agents solicited the late J. H. Dickerson to purchase the mentioned lands; that these negotiations continued for some, time and it was finally decided that the broker and agents of the complainants should prepare a contract and submit the same to the parties; that said contract so prepared was not satisfactory to complainants and said complainants caused a contract to be drawn and submitted the same to the defendant; that defendant believing that it contained the stipulations and agreement that complainant was willing to agree to, took the contract so prepared and examined the same and made such changes as in his opinion were reasonable and necessary and offered the same to the complainant; that thereupon complainants executed said contract as it now stands; that the terms of the contract therein mentioned were not first agreed on verbally and then reduced to writing; that the terms and stipulations contained in said contract were not fully and finally determined and agreed upon until the said contract was drawn by complainants, submitted to defendant and finally executed by the complainants; that the contract made and entered into by defendant was the contract as contained in the exhibit attached to the bill of complainant; that there was no mistake on the part of the defen-

dant as to the terms of the contract mentioned, or on the part of the clerk; but the contract instead of being first agreed on was prepared by complainant and submitted to defendant as aforesaid; that if there was any mistake on the part of the complainant it was due to his own gross negligence and was not due to any default on the part of defendant or any representations made by him; that defendant paid the consideration mentioned in said contract, to-wit: two thousand dollars with the honest belief that he would receive all the benefits and advantages of all the covenants, stipulations and provisions contained in said contract as it now stands and that but for a stipulation in said contract that complainant would clear such part of said lands as defendant required for improvements defendant would never have entered into said contract; that shortly after complainant and defendant entered into said contract, the wife of defendant, Mrs. Dickerson, expressed a wish to preserve the trees on a portion of said land for shade and ornamental purposes; that thereupon complainant and defendant entered into an agreement by which defendant should own absolutely all of the growing trees on said portion and should pay complainant therefor the sum of twenty-five dollars; that the money was paid and the transaction closed; that the purpose of said agreement was to take out of the operation of the contract said portion of said lands in order that the defendant might preserve such trees as he desired for shade and ornamental purposes on said parts of said lands; that there was no agreement or understanding between complainants that the said parts of the said lands were the ones defendant wanted cleared under the contract, nor that said transactions should relieve the complainant from carrying out the stipulations afore-

said as to the clearing of such parts of the said lands as the defendant required for improvements; that defendant did serve notice on complainant to clear about 500 acres of said lands; that it is not true that said contract was entered into by mistake.

To this answer a general replication was filed and testimony was taken before a master.

On final hearing the following decree was entered:

"This cause came on for final hearing, upon bill, answer, replication and proof, and the counsel for the respective parties having argued the same and the court being advised of its judgment;

IT IS ORDERED, ADJUDGED AND DECREED that the contract made between the complainants, G. Parodi and Esther Parodi, his wife, and J. H. Dickerson, on the 5th day of April A. D. 1901, set forth in the Bill of Complaint, be and is hereby reformed so that the sixth paragraph thereof shall read as follows:

'That parties of the first part covenant and agree with the party of the second part, that whenever the party of the second part shall require any part of the said lands for the purpose and to the extent necessary for the erection of a residence thereon and the improvement of a small portion thereabout for the purposes usually incident to a residence in the said country, to-wit: for a house-yard and garden for the raising of produce for himself and family and a small portion for cows or horses used by him for domestic purposes, the parties of the first part will cut the pine trees off of such parts of the said lands, so required by the party of the second part for improvements as aforesaid, and remove the tops of same, conditioned upon the party of the second part paying the parties of the first part three cents per cubic foot for all

logs so cut, such logs then to be the property of the party of the second part. Wood to be taken off clean as gone over.'

And it appearing that after the making of the said contracts the complainant and the said J. H. Dickerson took possession of and enclosed the land so agreed upon, amounting to about sixty acres; now therefore,

IT IS CONSIDERED, ORDERED AND DECREED FURTHER, that the defendant and his successors in administration of the estate of the said J. H. Dickerson, he and are hereby perpetually enjoined from demanding, or attempting to enforce the demand that the complainants shall, under the said contract, improve or permit the defendant or his successors in administration as aforesaid to improve any land outside of the said enclosure, except in accordance with the provisions of said contract other than the sixth paragraph. And

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the defendant and his successors in administration of the estate of the said J. H. Dickerson be and they are hereby perpetually enjoined from prosecuting the suit now pending in the Circuit Court of Santa Rosa County, Florida, by the defendant against the complainant, G. Parodi, or any other suit to recover any damages from the said complainant or his legal representatives for any failure or refusal to improve or permit to be improved, under the said sixth paragraph of said agreement, land other than that possessed and enclosed as aforesaid by the said J. H. Dickerson.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the defendant to pay the costs of this cause and that the execution do issue in favor of the complainants against him, the said defendant, to be levied

out of the lands and tenements, goods and chattels which have come or may come into his hands as administrator of the estate of J. H. Dickerson to be administered. Done at Chambers, this October 28th, A. D. 1904.

CHARLES B. PARKHILL,<br>Circuit Judge."

The sixth paragraph referred to in the decree is the last paragraph quoted above from the deed of conveyance.

A rehearing was denied and the defendant entered his appeal from such final decree and assigns as errors thereon that the court erred in; (1) Overruling defendant's demurrer and complainant's bill of complaint; (2) Making a restraining order; (3) Rendering a final decree; (4) Denying defendant's petition for rehearing.

*C. M. Jones,* and *Avery & Avery,* for Appellants.

*Blount & Blount* and *Thos. F. West,* for Appellees.

WHITFIELD, J., *(after stating the facts.)* It is contended that the demurrer to the bill of complaint should have been sustained because, it is said, the allegations in effect simply mean, "That complainants being aware of the contents of the instrument they signed believed that the legal effect of the stipulation in question was as they say they intended in the preliminaries leading up to it— that the deed should be reformed because they misunderstood the legal effect of a provision in it."

Where an instrument is drawn and executed which professes or is intended to carry into execution an agreement previously entered into, but which by mistake of the draughtsman, either as to fact or to law does not fulfil that intention or violates it, equity will correct the mis-

take so as to produce a conformity to the intention. 1st Story's Equity Jurisprudence. Section 115.

Where the parties, with knowledge of the facts, and without any inequitable incidents, have made an agreement, and a writing executed by them for that purpose, expresses the agreement as it was understood and designed to be made, equity will not interfere, although one of the parties may have mistaken or misconceived its legal meaning, scope and effect.

If, on the other hand, after making an agreement, in the process of reducing it to a written form, the instrument, *by means of a mistake of law,* fails to express the tract which the parties actually entered into, equity will interfere with the appropriate relief, either by way of defense to its enforcement, or by cancellation, or by reformation, to the same extent as if the failure of the writing to express the real contract was caused by a mistake of fact. In this instance there is no mistake as to the legal *import of the contract actually made;* but the mistake of law prevents the real contract from being embodied in the written instrument. In short, if a written instrument fails to express the intention which the parties had in making the contract which it purports to contain, equity will grant its relief, affirmative or defensive, although the failure may have resulted from a mistake as to the legal meaning and operation of the terms or language employed in the writing. Among the ordinary examples of such errors are those as to the legal effect of a description of the subject-matter, and as to the import of technical words and phrases; but the rule is not confined to these instances. See Pomeroy's Equity Jurisprudence, Volume 2, Sections 843-845. The law as thus announced finds ample support in the authorities.

See Lee v. Percivel, 85 Iowa, 639; 52 Northwestern, 543 and authorities there cited; Silbar v. Ryder, 63 Wisconsin 106; Benson v. Markoe, 37 Minnesota 30, 33 Northwestern Rep. 38; Franklin v. Jones, 22 Florida 526; Jackson v. Maybee, 21 Fla., 622.

Where an agreement has been actually entered into, but the contract, deed or other instrument in its written form does not express what was really intended by the parties thereto, equity has jurisdiction to reform the written instrument so as to conform to the intention, agreement and understanding of all the parties. Claypoole v. Houston, 12 Kansas 324; Stephenson v. Elliott, 53 Kan. 550, 36 Pac. Rep. 980. See also Chamberlain v. Lesley, 39 Fla., 452, ... South. Rep. .....

Where parties have made an agreement and the scrivener by mistake failed to express it in apt words and terms, equity will reform the writing to make it conform to the agreement previously entered into between the parties. Courtwright v. Courtwright, 63 Iowa 356; 19 Northwestern 865.

The bill sufficiently states the agreement of the parties, and alleges the mistake of the scrivener in omitting to fully or sufficiently set forth the agreement in the deed, and that complainants executed the deed in the belief that it did amply set forth the agreement of the parties as to the extent of the improvements mentioned, when in reality the deed does not contain such agreement; and states the injury to the complainants.

No negligence of complainants is shown by the bill.

The demurrer was properly overruled.

The word "improvements" in the deed is ambiguous. Its meaning is not made entirely clear by a reading of the whole deed.

In the case of L'Engle v. Scottish Union & National Fire Insurance Co., 48 Florida 82, 37 Southern Reporter 462, this court said: "If a written contract is ambiguous or obscure in its terms so that the contractual intention of the parties cannot be understood from a mere inspection of the instrument, extrinsic evidence of the subject-matter of the contract, of the relations of the parties to each other and of the facts and circumstances surrounding them when they entered into the contract, may be received to enable the court to make a proper interpretation of the instrument."

In the case of Franklin v. Jones, 22 Florida, 526, this court held: "That while equity would reform a written instrument when by a mistake it did not contain the true agreement of the parties, yet it would only do so when the mistake was plain and the proof was full and satisfactory. That the writing should be deemed to be the sole expositor of the intent of the parties until the contrary was established beyond reasonable controversy. That such relief would not be granted where the evidence was loose, contradictory or equivocal."

In construing the different provisions of a contract all must be so construed, if it can reasonably be done, as to give effect to each. If one interpretation, looking to the other provisions of the contract and to its general scope, would lead to an absurd conclusion, such interpretation must be abandoned and that adopted which will be more consistent with reason and probability. L'Engle v. Scottish Union & National Fire Insurance Co., 48 Florida 82, 37 South. Rep. 462; Silbar v. Ryder, 63 Wisconsin, 106; Griswold v. Hazard, 141 U. S. 260.

Among the witnesses whose testimony was taken by the master was G. Parodi, one of the complainants, but

his testimony will not be considered as it relates to transactions and communications between said witness and J. H. Dickerson then deceased. Section 1085 Revised Statutes of 1892.

One of the witnesses, P. M. McCarthy, testified that he was present when G. Parodi and Dickerson contracted for the sale of the land in question; that Dickerson asked "if it would be satisfactory if he could clear off twenty or thirty acres. He wanted a place to put his farm hands in, those he intended to take care of the cattle. Mr. Parodi said it would be all right and they reached an understanding. It was some months after that before he had in any way cleared it at all." When asked was there not an agreement between Mr. Parodi and Mr. Dickerson in reference to the extent of the lands which should be cleared for improvements, he answered, "Well, the amount was twenty or thirty acres. That was the amount mentioned by Mr. Dickerson himself. He expressed it in that way, that it would be all he would need." Testifying further, this witness said, "four or five months after that he had selected a piece of land asked Mr. Parodi to let the land inspector, Mr. Cobb, go down, look it over and show him the lines. Mr. Cobb went down there and stated I think there was sixty acres. Mr. Dickerson stated he needed this for improvements and requested Mr. Parodi to allow him to clear it for himself and pay for the timber and pay him $25.00 for the privilege and upon the payment of the $25.00 Mr. Parodi authorized him to take possession of this land as improved land under the terms of the original contract."

F. H. Cobb, one of the witnesses, testified that he was riding through the land of Parodi & Co. sold to Dickerson and found a wire fence stretched around about sixty

acres and that Mr. Dickerson told him that that was the part he had selected for improvements under the contract and that he wanted to buy that timber inside and clean it up as he saw fit.

John E. Stillman, a witness, testified that he was present during the negotiations between Dickerson and Parodi and that "Mr. Dickerson stated that he expected to raise cattle" on the place, "and that the clause referring to the clearing of the land at his request would only require such an amount of land to be cleared as would be needed by him for ordinary farming purposes and raising ordinary crops such as would be raised in that section and that the amount would not be considerable."

J. J. Sullivan testified that he knew of the negotiations and that "in substance, the conversation was that Dickerson wanted to buy this land, about 2000 acres, and wanted a place for a residence on the bay, a residence there, and in conversation said he wanted, to the best of my recollection, I should say he wanted sixty acres, about sixty acres for cultivation."

This testimony was not contradicted; and, when taken in connection with the provisions in the deed allowing the complainants five years to remove the timber from one-half of the premises to be selected by them and an additional five years for removing the timber from the other half of the lands, and for the purchase by the grantee, who was to engage in stock raising, of the logs to be cut from the lands on which the improvements were to be made, it seems clear that the word "improvements" as used in the paragraph of the instrument here sought to be reformed had reference to such portions of land usually necessary for a residence and the incidents thereto for a person engaging in stock raising, and could not have

referred to any greater portion of the land which the grantee might arbitrarily designate as being required for improvements.

It is the duty of counsel to present the exceptions taken to testimony to the Chancellor, and to ask his rulings thereon at or before the final hearing; and where the request for such rulings is made for the first time in a petition for rehearing, the Chancellor may for that reason alone refuse to enter his rulings.

This court has not considered the testimony of G. Parodi, and as the decree of the court is amply sustained by other testimony in the record, there was no error in refusing a rehearing.

The decree is affirmed.

SHACKLEFORD, C. J., and COCKRELL, J., concur.

TAYLOR and HOCKER, JJ., concur in the opinion.

PARKHILL, J., disqualified.