Cornelia C. Baldwin, *et al., Appellants,* v. John G. Christopher, *et al., Appellees.*

Opinion filed April 22, 1918.

Petition for rehearing denied June 10, 1918.

1. Equity will reform a written instrument where because of mutual mistake it does not contain the true agreement of the parties only when the proof is full and satisfactory as to the mistake.

2. The right to the reformation of an instrument is not absolute, but depends on an equitable showing.

3. While equity will reform a written instrument when by a mistake it does not contain the true agreement of the parties yet it will only do so when the mistake is plain and the proof full and satisfactory. The writing should be deemed to be the sole expositor of the intent of the parties until the contrary is established beyond reasonable controversy.

4. Courts of equity view with disfavor suits brought long after the transactions in issue have occurred, and long after death has closed the lips of those familiar with the occurrences remote in point of time.

5. In a suit for the reformation of a written instrument, when the evidence is conflicting and the finding of the chancellor thereon does not clearly appear to be erroneous, it will not be disturbed on appeal.

6. Where a deed of conveyance reserves from a tract of land conveyed all the land above a stated number of acres, such reservation "to be taken from the west end of said lands," the reservation in the deed of conveyance will not be reformed so as to make it read "from the east end" instead of "from the west end," where the parties to the conveyance and those who may have known of the circumstances of the transaction have long since died, and the evidence does not show beyond reasonable controversy that a mutual mistake was in fact made by the parties to the conveyance in designating the location of the lands reserved.

Appeal from Circuit Court for Duval County, Daniel A. Simmons, Judge.

Decree affirmed.

R. H. Liggett, E. J. L'Engle and Geo. M. Powell, for Appellants;

N. P. Bryan, J. T. G. Crawford, P. H. Odom, Axtell & Rinehart, Geo. C. Bedell, Frank E. Jennings, A. Y. Milam and M. H. Long, for Appellees.

WHITFIELD, J.—This proceeding seeks reformation of a deed of conveyance so as to make a provision therein contained "exempting and reserving from the lands * * * described * * * all * * * above 83 acres, which reservation to be taken from the west end of said land," read "east end" instead of "west end." Other incidental relief is also prayed.

The second amended bill of complaint filed by leave

of court on March 9, 1915, in effect alleges, among other matters, that on March 17, 1855, by virtue of a grant from the United States of America, and certain mesne conveyances, one Robert Bigelow was seized and possessed of an estate in fee simple absolute in described lands with authority to sell and convey the same, and on said day Robert Bigelow and wife did convey to Abel S. Baldwin and his heirs said lands described as "all that certain piece and parcel of land, lying and being situated on the West side of the River St. Johns in the county and State aforesaid, and containing eighty-nine acres more or less, said piece of land being a part of the tract of land known as the Smithfield tract. The said piece or parcel of land is bounded as follows: On the north by the land of Ephraim Harrison, on the West by lands of George Huston on the south by a portion of said Smithfield tract, and on the East by the River St. Johns. The first line begins at a post on the margin of the St. Johns River and runs west three degrees North fifty-seven and one-half chains, on the line bounding Ephraim Harrison's land to a .* .* .* post, the second line runs south fifteen chains to a post, the third line runs East three degrees South fifty-eight chains to a post on the margin of the River St. Johns, and the fourth line runs along the margin of said St. John's River to the place of beginning," referred to as the "Bigelow Tract;" that said Abel S. Baldwin entered into possession of every part and parcel of said land above described, including the riparian rights;" that in March, 1855, "and until the present time the eastern end of said Bigelow tract consisted of marsh land extending to the margin of the St. Johns River, and comprising, to-wit, about twenty (20) acres of land, and that all the rest of said tract was high and arable and that said

conditions still exist to the present time;" that on May 16, 1866, "said Baldwin and wife conveyed to one George Hancock one acre of said Bigelow Tract, described as follows: 'One acre known as part of a tract conveyed to A. S. Baldwin by Robert Bigelow and wife, on the west bank of St. Johns River, containing one acre, on the northeast corner of tract, commencing in marsh on northeast corner of said tract, 100 feet from highland; thence running west along said line of lands owned by Ephraim L. Harrison, 420 feet to a stake; thence south 105 feet to a stake; thence east 420 feet to a stake in the marsh; thence north 105 feet to place of beginning, being one acre out of the tract which by agreement is to be conveyed to James Ross upon fulfillment of certain conditions, and the sale of this acre is made at the request of James Ross for his benefit, and by his approval, he not being able to give legal title to the same, which deed was duly recorded in the public records of Duval County, Florida; 'that the name 'James Ross' was an alias for a negro named James Lewis to be referred to in the next succeeding paragraph;' that on January 10, 1867, the said Baldwin at the request of said James Lewis, alias James Ross, executed a deed of conveyance to one Moses White, for one acre of land described as 'situated in the Bigelow tract on west side of St. Johns River, said one acre lying adjacent to that occupied by Joshua Jones, and lying about 30 chains from the St. Johns River and 300 feet from west line of the Smithfield Tract;' that some time prior to September 13, 1867, said Baldwin at the request of said James Lewis, conveyed one acre each to one Daniel Clarke and one Henry Stephens, being part of said Bigelow tract; that complainants have been unable to procure a description of the said one acre tracts, but

upon information and belief allege that said tracts were a part of the Bigelow tract which lies west of the said marsh land; that on September 13, 1867, the said Abel S. Baldwin and wife in consideration of $498.00 executed a deed of conveyance to said James Lewis, whereby they conveyed to him seventy-nine (79) acres of the said Bigelow Tract; that complainants have been unable to procure an inspection of the said original deed, and that the description of said 79 acres of land as it appeared from the record of said deed is as follows: "Seventy-nine acres of the Smithfield Tract on west side of St. Johns River, bounded on north by lands formerly of Ephraim Harrison (now of H. Bisbee) west by lands formerly of Dr. J. W. Mitchell, east by River St. Johns; beginning at a post on margin of river, run W. 3° N. 57.50 chains on south line of Ephraim Harrison to post; S. 15 chains to post; W. 3° S. 58 chains to post on margin of river; thence along margin of river to place of beginning; reserving from the lands all and above eighty-three acres, which reservation to be taken from the west end of said lands described as above, and said 83 acres including the 4 acres conveyed to George Hancock, Moses White, Daniel Clark and Henry Stephens, respectively, by the said parties of the first part, at the request of said party of the second part; and it is not the intention of this deed to grant any estate in said acres; that said land hereby conveyed being 79 acres of the tract conveyed to said Baldwin by Robert Bigelow, Trustee, March 17, 1855; that said deed was recorded in Deed Book O page 73; that as to the part of said Bigelow Tract conveyed to James Lewis by Abel S. Baldwin and wife by deed dated September 13, 1867, it was the intention of said Abel S. Baldwin and James Lewis, that the 79 acres thereby to be conveyed and

also the three acres conveyed respectively to Moses
White, Daniel Clark and Henry Stephens, should be
taken from the western end of said Bigelow Tract; and
that all the remainder of said tract consisting of marsh
land lying next to the St. Johns River should be reserved
by said Abel S. Baldwin, and that it was so mutually
and finally agreed between them; and that by mutual
mistake on the part of the said Abel S. Baldwin and
said James Lewis, the said reservation was expressed
to be taken from the west end of said Bigelow Tract
either in writing of said deed of September 13, 1867, or
else in the recordation thereof; and that it was then and
there, as your orators are informed and believe, and
upon said information and belief alleged the true inten-
tion of the said Abel S. Baldwin to convey, and of the
said James Lewis to receive a conveyance of the said
seventy-nine (79) acres of which the said James Lewis
afterwards took possession; that in pursuance of the
true intention of an agreement between the said Abel S.
Baldwin and James Lewis, as alleged in the preceding
paragraph, the said James Lewis entered into the pos-
session of the extreme western 79 acres of the said
Bigelow Tract and occupied and claimed up to the west
boundary thereof, and sold off portions of said tract
abutting on the west line thereof, and left open and
unoccupied a large part of the said Bigelow Tract lying
next to the St. Johns River of sufficient dimensions to
satisfy the reservation made by said Abel S. Baldwin;
and neither of the said deeds to Henry Stevens, Daniel
Clark or Moses White covered the said portion of said
Bigelow tract next to the St. Johns River; and neither
of the said parties ever occupied the same; that about,
to-wit, March 14, 1883, the said James Lewis caused
the whole west part of said Bigelow Tract to be surveyed

and platted in Blocks, Lots and streets, and he caused
the said plat thereof to be recorded under the name of
Lewisville, in Deed Book A.L., page 498, records of Duval
County, Fla.; and that the said blocks and lots so platted
and laid off abutted upon the west line of said Bigelow
Tract and extended eastward towards the St. Johns
River to a point in said marsh, over 800 feet from the
St. Johns River.    And that on April 24th, 1886, the said
James Lewis made and recorded in Plat Book 1, page
25 of the records of Duval County, Fla., another plat of
said west end of the Bigelow Tract aforesaid; and that
in and by said plat it was acknowledged by the said
Lewis that the said marsh extended 1270.5 feet beyond
the east line of said Lewisville as platted by said Lewis;
and that a considerable body of marsh land does lie
between the eastern line of said plat and the St. Johns
River; that the part so platted by James Lewis con-
tained 73 acres of land; that at the time of filing said
plat, to-wit, March 14th, 1883, the said James Lewis
identified said plat as a map of the land purchased by
him from A. S. Baldwin, by an affidavit made by him
at that time; that said Lewis made conveyance of all
of said plots of ground abutting upon said west line
of the Bigelow Tract and put his grantees in possession
thereof; that there was 89 acres in said Bigelow Tract,
and that the said conveyance to the said Lewis, Clark,
Stevens and White were satisfied in full from the western
part thereof, and the land conveyed to Hancock as
aforesaid, was located in the northeast corner of said
Bigelow Tract; and that after the satisfaction of these
conveyances there was left a considerable body of land
bounded by the margin of the St. Johns River, title to
which remained in the said A. S. Baldwin; that neither
the said James Lewis, nor any assignee of his, nor his

heirs nor any assignee of theirs, nor any person claiming under said Lewis or his heirs or their assigns, nor any one else, has ever entered upon the physical possession of said submerged land or any part thereof, or improved the same by erecting docks or wharves thereon, or in any other manner; and that said land was and has ever since been vacant and unimproved and in the possession of none other than the said Baldwin and his devisees, the complainants; that neither the said James Lewis, nor any assignee of his nor any heir of said James Lewis deceased, prior to the institution of this suit ever claimed title to said submerged land; that said six (6) acres, so reserved and excepted from the operation and effect of said deed by the said Abel S. Baldwin as aforesaid, was and still is a strip of marsh land, not cultivated or used in any manner, lying to the eastward of, and between the said tract of Lewisville and the St. Johns River, which said tract is at spring tides covered by the water of said river, and that said six acres of marsh land is wild, vacant and unimproved, and has never been in the possession, actual or constructive of the said James Lewis, nor any assignee of his, nor his heirs, nor any assignee of theirs nor any assignee of either of said heirs, and that said six acres of marsh land has always been legally in the possession of said Abel S. Baldwin and of your orators, as the devisees of said Baldwin; and that neither the said James Lewis, nor any assignee of his, nor any heir of said Lewis has ever claimed title to said six acres of marsh land prior to the institution of this suit; that said Abel S. Baldwin left a last will and testament duly executed according to the laws of the State of Florida, and dated April 22, 1898, and was admitted to probate in the office of the County Judge for Duval County, Florida, and in and by the 8th clause of said last will

and testament said Abel S. Baldwin made the following disposition of said property, to-wit: "I also give, bequeath and devise to Charles C. Baldwin, Eliza S. Baldwin and Cornelia C. Baldwin, whatever balance of property there may remain to me of the piece of land purchased from Bigelow lying east of Jacksonville and near the Shell Road;" that the said Abel S. Baldwin in said eighth clause of his will referred to the said lands reserved by him in his conveyance to James Lewis, as aforesaid; that complainants were entirely ignorant of the mistake made in the said deed from Baldwin to Lewis, in respect to the location of the reservation of the said six acres until June, 1914, and that it was not until then that your orators learned of the practical construction of said deed of September 13th, 1867, by the said James Lewis and the said A. S. Baldwin, and that it was in June, 1914, that your orators first learned of the facts and circumstances, which entitle them as devisees of A. S. Baldwin, deceased, to take said reservation of six acres from the east end of said tract; that the six acres of marsh land referred to are uncultivated, unimproved, wild and vacant and in its present condition is not susceptible of being used or any purpose, and to all intents and purposes said six acres of land are in the same condition as they were on September 13, 1867; that complainants are constructively in possession of said six acres of land lying along the margin of the St. Johns River.

The prayer is that the deed of conveyance from Abel S. Baldwin to James Lewis "and the description therein contained, be reformed under the decree of this Honorable Court in accordance with the true intent and meaning of the parties thereto, as hereinbefore set forth and stated, and in such manner as to except and reserve

from, the operation and effect of said deed the said residue of six acres from the eastern end of said tract, instead of from the western end thereof," and for other incidental relief and for general relief.

The answers contain demurrers for want of equity and on special grounds and also set up different periods of limitation to show laches and deny material allegations on which the complainants' case rests, some of the defendants averring purchases for value and without notice of the complainants' claim as now asserted. Voluminous testimony was taken by examiners; and on final hearing the bill of complaint being dismissed, complainants appealed.

If no error was committed in refusing a reformation of the deed so as to make the reservation or exception read "from the *east* end of said land" instead of "from the *west* end of said land," the other matters presented need not be discussed.

Equity will reform a written instrument where because of mutual mistake it does not contain the true agreement of the parties only where the proof is full and satisfactory as to the mistake. Bexley v. High Springs Bank, 73 Fla. 422, 74 South. Rep. 494.

The right to the reformation of an instrument is not absolute, but depends on an equitable showing. Phoenix Insurance Co. v. Hilliard, 59 Fla. 590, 52 South. Rep. 799.

While equity will reform a written instrument when by a mistake it does not contain the true agreement of the parties yet it will only do so when the mistake is plain and the proof full and satisfactory. The writing should be deemed to be the sole expositor of the intent of the parties until the contrary is established beyond a reasonable controversy. Jacobs v. Parodi, 50 Fla. 541,

39 South. Rep. 833; Horne v. J. C. Turner Cypress Lumber Co., 55 Fla. 690, 45 South. Rep. 1016; Indian River Mfg. Co. v. Wooten, 55 Fla. 745, 46 South. Rep. 185.

Courts of equity view with disfavor suits brought long after the transactions in issue have occurred, and long after death has closed the lips of those familiar with the occurrences remote in point of time. Geter v. Simmons, 57 Fla. 423, 49 South. Rep. 131.

In a suit for the reformation of a written instrument, when the evidence is conflicting and the finding of the chancellor thereon does not clearly appear to be erroneous, it will not be disturbed on appeal. Rosenthal v. First Nat. Fire Ins. Co. of the United States, 74 Fla. 371, 77 South. Rep. 92; Robinson Point Lumber Co. v. Johnson, 63 Fla. 562, 58 South. Rep. 841.

The east and west lines of the land conveyed to Lewis by Baldwin were nearly four times as long as the north and south lines of the land. It appears that Lewis platted nearly all of the land beginning at the west line and leaving open and unplatted the east end consisting mostly of marsh land extending to the river; that Lewis lived in a house towards the east end and at the time maintained and used a rough board walk across the marsh to the river where he kept a boat for fishing purposes; that Baldwin paid no taxes on any of the land after his conveyance to Lewis; that Lewis paid taxes assessed against the land and exercised rights of ownership over it; that Lewis had a fence on the land that left marsh land open between the fence and the river; that there are more than 83 acres of land between the water line of the river and the west line of the land as established subsequent to the conveyance to Lewis and it does not appear that Baldwin objected to the acts of possession by Lewis of the west end of the land. The

east end was then of no practical use while the west end was habitable.

The parties to the conveyance now sought to be reformed have been dead many years. Those who may have known of the circumstances of the transaction at the time it occurred have also died, leaving only circumstances and conjecture to support the issue made. Numerous conveyances for valuable considerations have been made upon the faith of the reservation as made.

There is no direct evidence that a mistake was in fact made in the reservation expressed in the deed of conveyance from Baldwin to Lewis by which the grantor reserved all "above 83 acres" "to be taken from the west end of said lands." In the third call of the description, viz: "W. 3° S. 58 chains to a post on margin of river," the letter "W" meaning "West" is patently an error because the description shows the river to be *east* and *not west* from the end of the second call. Dr. Baldwin conveyed to Hancock at the request of Lewis one acre "on northeast corner of tract," and the tract pursuant to a previous agreement was subsequently conveyed to Lewis. The location of this acre is not on the river but it is not inconsistent with the reservation "to be taken from the west end of the lands." Apparently the marsh lands next to the river were then of little value and not in demand; and the east line of the Hancock acre may have been the limit of useful property or the waters of the river may have then extended approximately to that point. In 1868 Lewis conveyed to May Williams a part of the land described as follows: "Begin at eastern corner of land conveyed to James Lewis (Q-73), run N. 3.30 chs., W. 10.00 chs., S. 3.30 chs., E. to beg., 5 acres." This conveyance is consistent with an eastern boundary on the "margin of the river," which was the

eastern boundary "of land conveyed to James Lewis (Q-73)," and consistent with the reservation on the west end of the lands. The fact that May Williams may have taken possession of a portion of the lands towards the southeast corner with an eastern boundary more or less removed from the river does not show title to lands different from those described in his conveyance from Lewis. Nor does it show that Lewis did not claim to the "margin of the river" in accordance with his conveyance from Dr. Baldwin. It is clear that the conveyance from Baldwin to Lewis covered lands that extended to and along the "margin of the river," and the reservation is plainly "to be taken from the west end of said lands." Whether subsequent transactions between Dr. Baldwin and Lewis justified the platting by Lewis of the west end of the land and leaving the matter unadjusted when Dr. Baldwin devised "whatever balance there may remain to" him of the land, does not appear, but such may have been a fact. At this time, long after the death of all the parties who had knowledge of the facts, the patent error in the 3rd call of the deed to Lewis, the description in the Hancock deed, the conveyance by Lewis of 5 acres "at eastern corner of land conveyed to James Lewis," the acts of possession and ownership by Lewis over the west end, (which must have been with the knowledge of Dr. Baldwin, and perhaps by arrangement with him,) the uses to which the property was suited, the fencing of a part of the marsh leaving a part of it open to the river, the possible anticipation of the value of the water front many years in the future and other circumstances in evidence are not indisputably sufficient to overcome the plain terms of the reservation contained in the deed from Baldwin to Lewis that it was "to be taken from the west end of the lands,"

618     SUPREME COURT OF FLORIDA.

when Lewis in fact lived on the eastern portion of the lands, occupied the marsh lands at least to some extent by having a rough board walk out to the river over the marsh, paid taxes assessed against the land, Dr. Baldwin paying none, nothing being heard of the supposed error in the reservation during the many years when the property was useful for habitation on the west end and of little or no use on the east end, the use of the west end being all the while subject to the reservation by Dr. Baldwin until his rights therein were extinguished in due course of law; and the reserved rights of Dr. Baldwin may have been utilized by agreement and not fully adjusted leaving a possible interest still remaining in Dr. Baldwin which is referred to in his will as "whatever balance of property there may remain to" him in the tract of land. Certainly on a full and most careful consideration of the entire record it cannot fairly be said the complainants' case is proven beyond reasonable controversy or that the chancellor clearly erred when he in effect found and decreed that the evidence does not afford full and satisfactory proof that a mutual mistake was in fact plainly made by Dr. Baldwin and Lewis when the reservation was by them expressed "to be taken from the *west* end of said lands."

Since it does not appear that Dr. Baldwin owned to low water mark on the navigable river, questions presented of claims under the riparian act of 1856, need not be considered. See Thiesen v. Gulf, F. & A. Ry., decided at the present term.

Decree affirmed.

BROWNE, C. J., AND TAYLOR, ELLIS AND WEST, J. J., concur.