PER CURIAM.
Poultry, Inc. and Atlantic Cold Storage Corporation brought an action for damages, reformation of contract, specific performance and declaratory relief against It-venus, Inc., a Florida Corporation, Itvenus Development & Industrial Corp., a Florida Corporation, Trustee, Anita Guterma, A. L. Guterma, Phillip Jansen and his wife, Lynn Jansen, Phillip Jansen, Trustee, Moe Levin and Simon Lipsitz, and Benjamin C. Cohen. The plaintiff corporations, hereinafter called Udell, were controlled by Lawrence Udell and the Itvenus corporate group, hereinafter called Guterma, were controlled by Alexander Guterma. Defendants denied the essential allegations of the complaint and alleged Udell was estopped because of his actions as well as certain agreements upon which he sought recovery. The United National Bank filed its petition to intervene alleging it was an assignee of a purchase money mortgage executed and delivered from Atlantic Cold Storage Corporation to Itvenus. Intervention was granted and the Bank filed its answer denying the essential allegations of the plaintiffs’ complaint.
We will not attempt to summarize all the conflicting facts but the following appear to be generally correct and not contradicted.
Udell was a distributor of poultry and seafood products and was looking for new cold storage accommodations. The Itvenus defendants were controlled by Guterma who was building a cold storage warehouse to be controlled by Atlantic Cold Storage Corporation. Udell and Guterma met and established a friendly relationship. Udell signed an employment contract with Atlantic as general manager; Udell later became a 25% stockholder in Atlantic; and finally, Udell bought out Guterma’s interest in Atlantic and became the sole stockholder. On June 9, 1969 a comprehensive contract was made for the final purchase of Atlantic by Udell. Part of the purchase price was secured by a purchase money second mortgage given by Atlantic to Itvenus that was subsequently assigned to defendant Cohen. Later, the mortgage was assigned, subject to Cohen’s interest, to the United National Bank. Plaintiffs, dissatisfied with the cold storage warehouse and facilities as completed by Guterma, instituted this suit and recovered a final judgment and an award of $196,895.32 damages. This appeal is from the final judgment.
On appeal, appellants claim error in (1) permitting parol testimony to vary the terms of the June 10, 1969 agreement; (2) not finding Udell was estopped; (3) the lack of sufficient, competent evidence to sustain the judgment; (4) the award of speculative damages; (5) the finding that a scrivener’s error occurred which permitted reformation of a deed; (6) refusing to hold that Udell could not recover when he knew, or should have known the truth about any alleged representations made by the sellers (Guterma); and (7) that the *481 doctrine of equitable estoppel precluded Udell from collecting the judgment from the proceeds due the assignee, United National Bank.
A primary part of the controversy centers around the written agreement between the purchasers (Udell) and sellers (Guterma), dated June 10, 1969. Paragraph Three provided:
‡ % j{c s|e % >]i
“The Sellers agree and warrant that the construction upon the property of Atlantic Cold Storage Corp. located at 18770 N.E. Sixth Avenue, Miami, Dade County, Florida will be fully completed on or before June 30, 1969, and be paid for in full by the Sellers in accord with and in compliance with all agreements and instruments, together with any changes and/or modifications of the same, by and between Atlantic Cold Storage Corp., Itvenus Development and Industrial Corp., D.R. Mead & Company and Massachusetts Mutual Life Insurance Company, and being dated originally July 11th, 1968, the same are attached hereto and made a part hereof as Exhibit A. Further, Sellers to complete said construction in accord with the additional specifications requested by the Purchaser and agreed to by the Sellers and attached hereto and made a part hereof as Exhibit B, and further, Sellers agree and warrant that upon completion of all construction and/or other required improvements that said cold storage plant and facility will be placed in good working order and operation by the Sellers, on or before July 15, 1969.”
‡ * ‡ # * ‡
There was also a written agreement between the parties on the same date which recited that the June 10, 1969 agreement “supplants and replaces any and all representations and agreements heretofore made by or between the parties. Any variance that may arise is to be governed solely by the said agreement.”
In addition to these agreements on June 10, 1969 the sellers (Guterma) also executed an indemnity and hold harmless agreement in which they agreed to indemnify and hold the purchasers (Udell harmless in respect to “all representations set forth in the sales agreement and in the closing papers executed in consequence thereof”.
We hold the words used in Paragraph Three, supra, of the June 10, 1969 agreement, were sufficiently ambiguous and doubtful as to their meaning and intent in order to make parol evidence permissible to explain the intent of the parties. 13 Fla.Jur. Evidence § 397. For example, the sellers specificially agreed not only to complete construction in accordance with additional specifications attached to the agreement, but warranted that “upon completion of all construction and/or other required improvements that said cold storage plant and facility will be placed in good working order and operation by the sellers on or before July 15, 1969”.
What did the parties intend by the words “cold storage plant and facility”, or “all construction and/or other required improvements”? One of the main items of disagreement between the parties concerns the freezing capacity (not holding capacity) of a blast freezer. Did the parties intend that the blast freezer was “other required improvements” or the “facility” that was to be placed in good working order and operation by the sellers (Guterma) ? We find no error in the admission of pa-rol testimony to explain these and other vague or ambiguous recitals in the agreement.
Guterma asserts Udell is estopped from any recovery because it either failed to investigate; or knew, or should have known, as much information about the freezing capacity of the cold storage warehouse and blast freezing facility as the sellers. The buyers (Udell) say this position has no merit because a fiduciary relationship existed between Udell and Guterma. We are *482 of the view and hold that there was no fiduciary relationship on June 10, 1969 (date of various agreements) and that the parties were dealing at arms length with each other on that date.
The facts do not establish an estop-pel, however. They show Udell (plaintiff) attempting to obtain as much information as possible about the cold storage warehouse and blast freezing facility. Apparently Udell was investigating to the best of his ability. On June 10, 1969, the construction of the cold storage facilities were not complete and Udell could not be sure of their operational capabilities especially insofar as freezing capacity was concerned. On that date, however, the sellers (Guterma) with at least the same information (if not more) than the purchasers (Udell), represented by written agreement that the “cold storage plant and facility will be placed in good working order and operation by the sellers on or before July IS, 1969” and agreed by separate instrument of same date to indemnify and hold Udell harmless “in respect of all of the representations” in the sales agreement. We do not find that this estoppel was ever pled as an affirmative defense by Guterma. See 1.110(d) R.C.P., 30 F.S.A. Assuming that this issue of estoppel is properly before us we are of the view that Udell attempted to investigate these matters as much as possible and that it was not es-topped to rely on Guterma’s written representations that the improvements would be placed in good working order and operation on or before July 15, 1969; and that if they were not in such order Guterma would indemnify and hold Udell harmless.
There is sufficient, competent evidence in the record to sustain a finding that the cold storage warehouse and blast freezing facility were not complete and fully functioning on July 15, 1969, as set forth in the agreement between the parties.
We also find sufficient, competent evidence to sustain a finding that the South 35 feet of certain real property in Dade County, Florida, was omitted from a deed because of a scrivener’s error and we hold there was no error committed in reforming the deed to include the South 35 feet. See Jacobs v. Parodi, 50 Fla. 541, 39 So. 833 (1905); and Grover v. Grover, 144 Fla. 787, 198 So. 680 (1940).
The final judgment found the purchasers (Udell) were not estopped from asserting set-offs against the assignee of the original mortgage. It is conceded that the assignees were not holders in due course as the mortgage contained language which put them on notice that it was subject to certain conditions, provisions and covenants in the June 10, 1969 agreement. The burden of proving estoppel was upon the assignees and they were required to clearly and satisfactorily prove every essential part of an estoppel. Ennis v. Warm Mineral Springs, Inc., Fla.App.1967, 203 So.2d 514. Although the evidence concerning estoppel was conflicting there was sufficient,' competent evidence before the trial judge to sustain his finding that the assignees failed to prove an estoppel against Udell. We affirm this finding.
Finally, Guterma challenges the award of damages to Udell saying that part of the damages were based upon anticipated or projected profits of a new business and were too speculative to permit a recovery.
Assuming, without deciding, that Udell was entitled to sue and recover for loss of anticipated profits for a new business we must reverse because the record fails to show any substantial competent evidence of overhead, costs, or operating expenses which may be charged against the anticipated profits or gross revenues. See Butler v. Mirabelli, Fla.App.1965, 179 So.2d 868; and Myrick v. Miller, Fla.App.1971, 256 So.2d 255.
We affirm as to all .parts of the final judgment herein appealed except as to the award of damages in the sum of $118,596.27, which the final- judgment said *483 represented “net loss of revenue by reason of the non-function and malfunction of the blast freezing unit from August, 1969, through October, 1970”, and we reverse the final judgment, insofar as that specific award of damages is concerned, and remand for further action consistent with this opinion.
Affirmed in part; reversed in part.