LILLY K. HEISLER, *Appellant*, vs. FLORIDA MORTGAGE TITLE AND BONDING COMPANY and N. A. PERRY, as Joint Trustee, *Appellees*.

142 So. 242.

En Banc.

Opinion filed June 8, 1932.

*Baya & Baya*, and *W. A. O'Neill*, Attorneys for Appellant;

*McMullen & Draper*, Attorneys for Appellees.

DAVIS, Commissioner.—Appellant in her amended bill of complaint, alleged in substance that she was a registered nurse and sought a quiet location, away from traffic, upon which to build a sanitarium in the City of Tampa; that she was shown several lots in a subdivision known as Suburb Royal and was assured she could obtain said lots for the desired purpose; that an agent representing the purchaser of two lots on the Hillsborough River in said subdivision, approached her and offered to sell to her the said two lots for $8500.00; that she explained to the agent that she wanted lots solely for the purpose of building thereon a sanitarium and that unless they could be used for that purpose, she would not be interested, whereupon she was informed by said agent that he would go with her to the defendants who were the holders of the title and ascertain whether or not she could build a sanitarium on the lots; that she and the agent called upon the defendants, stated their purpose in calling and informed defendants that unless she could build a sanitarium on the lots and use them for that purpose, she did not want them; that she explained to defendants, who held the title because the purchaser had not fully paid for the lots, that she intended to invest all of her life's savings in the construction of buildings suitable for her purpose and that she wanted the lots for no other purpose; that the defendant advised her that she could construct a building on said lots and use and maintain it as a sanitarium, provided she did not use it for drunks, drug addicts or insane people, and to further assure her, the defendants later showed her a statement from their lawyers to the same effect; that the price was reduced $500.00 and relying solely upon the agreement of the defendants she paid them $8000.00 and

they delivered to her a deed conveying the property to her; that when the trade was made she was a widow unversed in real estate transactions, without advice of counsel, relied entirely upon her agreement with the defendants that she could build upon said lots a sanitarium, which was the sole object of their purchase, as the defendants well knew; that she completed on said lots a sanitarium at a cost of $30,000.00 and equipped it with furniture in the approximate sum of $4,000.00, and intended to use it in accordance with the terms of her agreement to purchase, and not use it for drunks, drug addicts or insane people; that soon after completion of sanitarium she was enjoined from operating it upon the ground that her deed contained a restriction against such use, and that upon appeal from a final decree permanently enjoining her from so using the property as a sanitarium the decree of the lower court was affirmed by the Supreme Court; that when she paid for said lots she was advised by defendants that they would have the deed made and give it to her later; that the deed was not delivered to her until on or about October 1, 1926, after it had been recorded, though it bears date September 21, 1926, and was recorded September 22nd, 1926; that upon receipt of the deed she placed it among her papers, and that she did not know until she was enjoined from using her sanitarium that it contained restricting clauses that would prevent her from using the property for which it was bought; that she was entitled to a deed in accordance with her agreement to purchase the said lots but that the deed delivered to and received by her does not carry out the agreement because it contains restricting clauses which were not part of the agreement; that the deed should be reformed in such a manner as to conform with the agreement, and that matters not agreed upon should be stricken therefrom. A

prayer for such relief, as well as general relief was contained in the bill.

The Florida Mortgage Title & Bonding Company answered the said amended bill. Many of the allegations of the bill were denied, or they were neither admitted nor denied with a demand of strict proof. The answer shows that the said defendants as joint trustees agreed to convey the said lots and to "give good title as therein stated, but avers that they advised her" that the said property as well as other property in said subdivision, with his exception of one block, "was subject to restrictions" set forth in the deed to complainant, the appellant here, and that they advised her that "in their opinion the use of the premises for a rest-cure sanitarium did not constitute a violation of the restrictions and that in furtherance of their said opinion they secured an opinion from their attorneys and showed same to complainant, that in the opinion of said attorneys that the use of the said premises for a rest-cure sanitarium did not constitute a violation of the restrictions as set forth in the deed." It is further averred that the complainant was enjoined shortly after the work was begun and before any material part of the building had been constructed, and it is admitted that the complainant "may have relied upon the opinion of this defendant and its attorneys" as to the use of the property. Said defendant also says the deed delivered to the complainant was the deed which was its purpose and intention to execute and which was the purpose and intention of complainant to receive, and denies that any mistake was made in the preparation of the deed, or including therein said restrictions; but avers that "the only mistake which might exist to the said entire transaction was a mistake in the opinion of the defendants or their attorney, and that even though such mistake might exist the complainant had no right to rely upon the same";

that there was no misconception on the part of said defendant as to whether or not the deed as executed carried out its agreement with complainant; that said defendant and one N. A. Perry, as Trustees, had previously contracted to sell the said property to one Ressler and that the contract contained the same restrictive covenants as are set forth in the deed to complainant, and it is averred that complainant acquired the rights of Ressler and thereafter surrendered the contract to said trustees and requested a deed in accordance with the terms of the contract. Said defendant further answering averred that Anna Marceau and others, for themselves and all others similarly situated, had filed a bill against the complainant for an injunction and that an injunction was granted as stated in complainant's bill of complaint, and that by reason thereof the persons obtaining said injunction became vested with an equitable right in the premises and that in consequence thereof complainant is not entitled to the relief she seeks. Copies of the injunction bill and decree thereon were filed with the answer and made a part thereof. A decree pro confesso was entered against N. A. Perry, as trustee.

Testimony was taken before a Master, and upon final hearing, the bill was dismissed. The cause is here upon appeal from the final decree.

It is admitted by the answer that the defendants advised the complainant that in their opinion the said lots could be used for the purpose of building thereon a sanitarium, and that they showed the complainant an opinion of their attorneys that the use of premises for a rest cure sanitarium would not violate the restrictions, and it is also inferentially admitted that they and their attorneys were mistaken as to the effect of restrictions that were inserted in the deed, it being their purpose and intention

to execute the deed as it was prepared, and to include therein said restrictions.

The testimony shows that one Ressler held a contract for the purchase of the lots in question, which contract contained restrictive covenants similar to those contained in the deed, and that at the time the complainant paid for the lots, an assignment was prepared in the offices of defendants and executed by Ressler, in the presence of the complainant, but that complainant had no knowledge of the assignment or the contents thereof. When she first went to the offices of the defendants with the real estate agent, she paid $400.00 as a "binder" for the lots, and when she returned later to close the deal she gave three checks to cover the balance of the purchase price—one payable to Suburb Royal, one payable to Ressler and the other for a comparatively small amount payable to an officer of the defendant corporation. These checks were prepared by the officer of defendant corporation and then signed by the complainant. No contract or receipt was taken by the complainant, but it was stated that a deed would be sent to her. No lawyers represented the complainant at any time prior to the consummation of the deal. There is no dispute as to complainant going to defendants to ascertain whether or not she could build a rest-cure home on the lots. The evidence is conflicting as to whether or not she was advised of restrictions upon the property, or the nature of them if she was so advised.

The following are excerpts from letter of the attorneys to the defendants, which complainant said she had read:

"In compliance with your request, we are handing you herewith our opinion of the restrictive covenants as contained in the Suburb Royal purchase contract * * * * * *

"The restrictive paragraph that 'said property is not to be used for the site of a factory, shop or for any other purpose inconsistent with the nature of a

strictly residential section' on which you desire an opinion * * *

"1. Does the restrictive clause refer only to the enumerated businesses and such other of similar character * * *

"The restrictive clause is rather ambiguous * * *

"We are in the opinion that a sanitarium or rest cure for nervous people in itself is not prohibited under the restrictive covenant of the Suburb Royal purchase contract."

It is somewhat significant that the injunction proceeding against the use of the property as a sanitarium was not instituted by the vendors, the defendants, but by purchasers of other lots in the subdivision.

It is not made to appear that the "Suburb Royal purchase contract", a copy of which we assume was before the attorneys for the defendants, contained the terms of the contract made with, or proposed to be made with, the complainant, but it is reasonable to assume that such contract was the one that was usually made with purchasers of lots in that subdivision. It is not unreasonable to assume that complainant was advised that such clauses would be in the deed to her. The question, therefore, arises, was the mistake of both complainant and defendants as to the effect of the restrictive clause or clauses of the instrument such a mistake as will justify a court of equity in reforming the deed by striking out objectionable restrictive covenants?

It is not within the province of a court of equity to rectify contracts, but only the instruments purporting to but not in fact evidencing the terms of the contract. The writing is deemed the sole expositor of the intention of the parties until the contrary is established. Smith v. Caravasios, 96 Fla. 219, 118 So. 10. Horne vs. J. C. Turner Cypress So., 55 Fla. 690, 45 So. 1016.

In Shell Creek Land Company vs. Watson, 101 Fla. 172,

133 So. 621, it was held that where an agreement has been actually entered into, but the contract, deed, or other instrument, in its written form does not express what was really intended by the parties thereto, equity has jurisdiction to reform the written instrument so as to make it conform to the intention and understanding of all the parties. See also Capital City Bank vs. Hilson, 64 Fla. 206, 60 So. 189; Ann. Cas. 1914 B-1211; Jacobs vs. Parodi, 50 Fla. 541, 39 So. 833.

Here the defendants intentionally inserted in the deed the restrictive clauses which complainant, the appellant, would have stricken therefrom, but when the deed was prepared and executed the grantors were of the opinion that such clauses would not, in effect, hamper the complainant in the use of the property, and such opinion was made known to and confidently accepted by the complainant as a basis for the purchase of the property.

It has been said, that "a mistake of law" happens when a party, having full knowledge of the facts, comes to an erroneous conclusion as to their legal effect. It is a mistaken opinion or inference arising from an imperfect or incorrect exercise of the judgment upon the facts as they really are. Barnett vs. Douglas, 102 Okla. 85, 226 Pac. 1035, 39 A. L. R. 189, 192, 10 R. C. L. 294; 23 R. C. L. 322; Movatt vs. Wright, 1 Wend. (N. Y.) 355, 19 A. D. 508, Note 55 A. S. R. 494.

21 C. J. 93 is authority for the statement that "the rule has often been stated with great positiveness that equity will not relieve against a mistake of law, but such relief has nevertheless frequently been given * * * The earlier cases exhibit a less liberal spirit in granting relief resulting mainly from the great influence which the early reported cases, decided by Chancellor Kent, had in shaping the early equity jurisprudence of this country. Later cases display a desire to discover some ground to rectify an

inequitable result flowing from mistakes of law, and while recognizing the rule, the courts are ready and even astute to seize upon any element of fact as sufficient in connection with mistake of law to justify the granting of relief.''

In 10 R. C. L. page 315, the authors say:

''There are two well-defined classes of mistakes of law in contracts; first, a mistake in law as to the legal effect of the contract actually made; and, second, a mistake in law in reducing to writing the contract, whereby it does not carry out or effectuate the intention of the parties. In the former, as the entire previous discussion relative to ignorance or mistake of law has shown, the contract actually entered into will seldom, if ever, be relieved against unless there are other equitable legal features calling for the interposition of the court; but in the second class, where the mistake is not in the contract itself, but terms are used in or omitted from the instrument which give it a legal effect not intended by the parties, and different from the contract actually made, equity will always grant relief unless barred on some other ground by correcting the mistake so as to produce a conformity of the instrument to the agreement.''

In 23 R. C. L. 322-3, it is said:

''The rule has been strongly asserted that a mere mistake of law, without other circumstances, constitutes no ground for the reformation of written instruments, except in a few peculiar cases. * * * The rule has no application where any degree of fraud, actual or constructive, is involved. Courts of equity will grant relief in all cases where the elements of imposition, misrepresentation, undue influence, misplaced confidence or surprise accompany a mistake of law.''

And on page 325 of volume 23 of R. C. L. we find the following:

''The United States Supreme Court has been rather strict in its adherence to the rule that a mere mistake of law cannot be corrected. Nevertheless, in one of its earlier decisions, it was distinctly stated that it was not

the intention of the court to lay down the rule that there might not be cases in which a court of equity will relieve against a plain mistake arising from ignorance of law; and in its more modern decisions, it has held that an admitted or clearly established misapprehension of law creates a basis for the interference of courts of equity, resting on discretion and to be exercised only in the most unquestionable and flagrant cases.''

In Griswold vs. Hazard, 141, U. S. 260, 35 Law Ed. 678, it was intended to make a bail bond, but the language used was that the obligor would abide and perform the orders and decrees of the court, and it was sought to hold the bondsmen not for his appearance but to the performance of the judgment. The Court said in the language of Judge Harlan:

"We are of opinion that although the condition of the bond in question was that Durant should 'abide and perform the orders and decrees' of the court in the suit in which it was given, all the parties, according to the decided preponderance of evidence, intended it, at the time, as an instrument binding the sureties for the appearance of the principal so as to be amenable to the process and decrees of the court, upon default in which, and not before were they to be liable to pay the penalty. If the bond means in law more than that—and counsel in this court agree that it does—the case is one of a mutual mistake, clearly established, as to the legal effect of the instrument. There was no mistake as to the mere words of the bond; for it was drawn by one of Hazard's attorneys, and was read by Griswold before signing it. But, according to the great weight of the evidence, there was a mistake, on both sides, as to the legal import of the terms employed to give effect to the mutual agreement. In short, the instrument does not express the thought and intention which the parties had at the time of its execution. And this mistake was attended by circumstances that render it inequitable for the obligees in the bond to take advantage if it. The instrument was drawn by one of Hazard's attorneys, and was presented and accepted as embodying the

agreement previously reached. Griswold was unskilled in the law, and took the word 'perform' as implying performance in the sense of Durant's becoming amenable to the process of the court. He had no reason—unless the recollection of Gray, Durant, Van Zandt and himself as to what occurred is wholly at fault—to doubt that the bond expressed the real agreement; especially if he heard Van Zandt's statement to Durant, when the latter was about to sign the bond, that it 'was in effect, a bail bond.' A court of equity ought not to allow that mistake, satisfactorily established and thus caused, to stand uncorrected, and thereby subject a surety to liability he did not intend to assume, and which, according to the decided preponderance of the evidence, there was at that time no purpose to impose upon him. While it is laid down that 'a mere mistake of law, stripped of all other circumstances, constitutes no ground for the reformation of written contracts'; yet 'the rule that an admitted or clearly established misapprehension of the law does create a basis for the interference of courts of equity, resting on discretion and to be exercised only in the most unquestionable and flagrant cases, is certainly more in consonance with the best considered and best reasoned cases upon this point, both English and American.' " To same effect, see Philippine Sugar Estate Dev. Co. vs. Government of the Philippine Islands, 247 U. S. 385, 62 Law Ed. 1177.

In Shearer vs. Pringle (Wis.) 233 N. W. 623, 71 A. L. R. 1302, the holding of the court as epitomized in the third head-note was as follows:

"A mutual mistake which would defeat the intention actually entertained by the parties to a contract, should be corrected in equity so as to put into effect such intention, whether the mistake is regarded as one of law or fact, and notwithstanding that the parties knew what words were employed and their ordinary meaning."

See also Hazard vs. Warner, 122 Wash. 687, 211 Pac. 732, 31 A. L. R. 381; Note 28 L. R. A. (N. S.) 811; 23 R. C. L. 326.

While the cases that we have had before this court are not on all-fours with the case at bar, the modern rule seems to have found favor here.

In Jacobs vs. Parodi, 50 Fla. 541, 39 So. 833, Mr. Justice Whitfield, speaking for the court said:

"If, on the other hand, after making an agreement, in the process of reducing it to a written form, the instrument, by means of a mistake of law, fails to express the contract which the parties actually entered into, equity will interfere with the appropriate relief, either by way of defense to its enforcement, or by cancellation, or by reformation, to the same extent as if the failure of the writing to express the real contract was caused by a mistake of fact. * * * In short, if a written instrument fails to express the intention which the parties had in making the contract which it purports to contain, equity will grant its relief, affirmative or defensive, although the failure may have resulted from a mistake as to the legal meaning and operation of the terms or language employed in the writing."

See also Chase vs. Sullivan, 99 Fla. 202, 126 So. 359.

In the instant case Mrs. Heisler was advised by a representative of one of the defendants that in his opinion she could build a rest-cure sanitarium on the property. She was not represented by an attorney and relied upon such opinion. The deed was prepared by defendants and recorded before it was delivered to her.

It is our judgment that the language used in the restrictive clauses of the deed did not accurately express the agreement and intention of the parties in the purchase and sale of the land in question, and that the deed should be reformed by a court of equity.

So far as we are advised this court has uniformly held that a party whose rights and interests are to be affected by a decree and whose actions with reference to the subject matter of litigation are to be controlled by the decree is a necessary party to the suit, and a court of chan-

cery will not proceed without them. Bannon vs. Trammell, 96 Fla. 408, 118 So. 167; McAdoo vs. Moses, 132 So. 638; Cline vs. Cline, 101 Fla. 488, 134 So. 546.

The record does not reveal that the complainants in the injunction suits acquired by the deed to them any rights that will be affected by a decree in Mrs. Heisler's favor, in this litigation. While the deeds to them provided that their said property should not be used for any purpose inconsistent with the nature of a strictly residential section, no provision in such deeds has been brought to our attention that would bind the owners of the subdivision or subsequent purchasers of other lots to observe such restrictions, nor has it been shown that Mrs. Heisler knew of any contract or understanding between such vendors and their vendees that Suburb Royal was to be a residential section and that the lots therein were not to be used for any other purpose. If the complainants in the injunction suit had acquired their property after the deed to Mrs. Heisler had been recorded, without notice of the circumstances connected with the transaction that lead up to the execution of such deed, it might be urged with some degree of plausibility that they had some interest in the subject matter of this litigation. Such is not the case with them, for it appears that they acquired the title to their lots before Mrs. Heisler purchased those involved in this litigation. They have no interest that is adverse to those of Mrs. Heisler, and therefore, are not necessary parties to the suit.

We are not called upon to determine what effect, if any, reversal of the decree will have upon the rights of the parties as affected by the decree in the injunction suit.

The court erred in entering a decree dismissing the bill. The decree appealed from is therefore reversed.

PER CURIAM.—The record in this cause having been considered by the Court and the foregoing opinion prepared

by Mr. Commissioner Davis under Chapter 14553, Acts of 1929, has been adopted by the Court as its opinion with the modification that a majority of the Court hold that the complainants in the injunction suit (Heisler v. Marceau, 95 Fla. 135, 116 Sou. Rep. 447) are necessary parties who must be brought into the cause before the Court is authorized to enter a decree of reformation which will in anywise affect or disturb the rights previously adjudged and judicially fixed by the proceedings had by such parties while the deed remained unreformed.

It is therefore considered, ordered and decreed by this Court that the decree of the Court below should be, and the same is hereby reversed, and the cause remanded with directions to have such other and further proceedings as may be according to right and justice, and not inconsistent with the foregoing. opinion as modified and adopted as the opinion of this Court.

Reversed and remanded.

BUFORD, C.J., AND WHITFIELD, ELLIS, BROWN AND DAVIS, J.J., concur.

TERRELL, J., not participating.