59 So.2d 514 (1952)
CHARLES H. DEEB, Inc.
v.
KESTNER et al.
Supreme Court of Florida, en Banc.
June 13, 1952.
*515 Ausley, Collins & Truett, Tallahassee, for appellant.
Caldwell, Parker, Foster & Wigginton, John T. Wigginton and Moore & Henderson, Tallahassee, for appellees.
MATHEWS, Justice.
Appellant (plaintiff below) filed his complaint for a declaratory decree in the Circuit Court of Leon County under statutory warranties of a deed which he received from the appellees in 1947. The complaint alleges that the deed covered two adjoining lots in a subdivision according to a plat recorded in the public records of Leon County, Florida, in Plat Book 1, Page 27. This plat was on record long prior to the time he received the deed. The recorded plat showed each of the two lots as being 50 feet in width and 200 feet in depth. A long time prior to the time appellant received his deed, a roadway had been open and paved adjoining the South boundary of the said lots. The road is known as Magnolia Drive. When the road was opened and paved it encroached upon the more Southerly portion of the lots by about 15 feet and appellant alleged that the amount of land called for in his deed was not available to him and he could not take possession of that part of the lot covered by the roadway and ditches. The complaint also shows that there were certain restrictive covenants imposed upon the lots under a deed filed for record on February 11, 1929. Among the restrictive covenants in the deed which was recorded was the following:
"(2) That said land shall be used for residential purposes and not more than one residence and the outbuildings thereof * * * shall be allowed to occupy said land or any part thereof * * *."
The appellees (defendants below) filed answers and motion to dismiss. At a pre-trial conference, regularly had, and on arguments on the motion to dismiss, it developed that Magnolia Drive, with its ditch bank encroachments, was open and constructed in 1934 and was paved in 1946, and had been used by the public continuously since being opened as a public way and the ditch maintained as an appurtenance to it. The encroachment was without color of title but was open and notorious. After the pre-trial conference, the able Circuit Judge entered a final decree which contained a clear discussion and opinion of the questions of law involved. Among other things, the final decree contained the following:
"* * * A determination of Plaintiff's rights is dependent upon the answer to the following question of law:
"`Is a public way present across property at the time of conveyance a breach of statutory warranties in a deed which has no reservation for the road?'
"Our statutory form of warranty deed imposes upon the grantors all the obligations and gives the grantee all the protection of the `full common law covenants' of warranty. Section 689.03 F.S.A.
"Obviously these covenants are breached if, at the time of the delivery of the deed, there is an adverse public possession or an outstanding public easement upon the property, or any part of it, unless the deed is construed as containing an implied exception or reservation of the public rights. * * *

*516 "Many years ago the Supreme Court of Florida placed this state among those holding that such reservation or exception is implied and that no breach of warranty arises by reason of the existence of a public easement for a highway on or across the property conveyed with full common law covenants of warranty. Van Ness v. Royal Phosphate Co., 60 Fla. 284, 53 So. 381, 30 L.R.A., N.S., 833. See also Seaboard Air Line R. Co. v. McRainey, 69 Fla. 462, 68 So. 753; James v. Gollnick, 100 Fla. 829, 130 So. 450, 452, Normandy Beach Properties Corporation v. Adams, 107 Fla. 583, 145 So. 870. * * *
"In the Van Ness case the court said of such an easement `It being open and visible, the purchaser must be presumed to have seen it and to have fixed his price with reference to the actual conditions of the land at the time of purchase.' This reasoning would seem to apply more strongly to urban than to rural property. In the purchase of city property the exact location of corners and boundaries is far more common than in the case of farm land or acreage, detailed surveys are more frequently required, plats are more readily available, and the value of the property, as well as its area, is more greatly affected by its location with respect to adjoining land and public streets. All these factors would tend to lead a purchaser to be more careful to `see' a public street and to `fix his price with reference to the actual condition of the land at the time of purchase'.
"The breach of warranty here complained of consists of a narrow strip along but embracing a part of a paved highway and a deep drainage ditch appurtenant thereto. These were clearly apparent upon the most casual inspection of the premises.
"Again in the Van Ness case the court said:
"`Why should the technical rules of conveyancing be converted into a trip to catch an unwary grantor, unskilled in them, when it is perfectly obvious that he never intended to bind himself to do that which he could not do, viz., remove a railroad right of way and track from the land he is selling, the existence of which was perfectly obvious to the purchaser?'
"It would seem from this rhetorical question that the court placed upon the purchaser the duty of ascertaining the location of the land he was buying and of inspecting this land and observing those things which would be apparent from such inspection. If this be true as to acreage or farm land, it is equally true as to highly developed city property. * * *
"It is therefore:
"Considered, ordered, adjudged and decreed: that the presence of the public highway and appurtenant drainage ditch described in the pleadings and stipulation filed herein do not constitute a breach of the covenants of warranty in any of the deeds described in plaintiff's chain of title to the land described in plaintiff's bill of complaint.
"That plaintiff is entitled to no relief against any of the parties to this cause."
The quoted part of the final decree and opinion of the Circuit Judge was without error.
The appellant raised two additional questions which were not specifically covered or mentioned by the final decree. They are: (1) "Can encroachments lay a predicate for alteration of restrictive covenants?", and (2) "Does a conveyance of two subdivision lots in one deed tie such lots together as a unit so that only one dwelling can be constructed on the unit, where the deed imposes the covenants on `said land' rather than `each of said lots'?".
It would be error for the lower court to adjudicate these matters when no proper parties were before the Court.
None of the parties to the suit except the appellant here alleged to be owners of any of the lots of the subdivision in question. No decree binding these parties or affecting their rights could properly have been entered unless they were parties to *517 the suit. See Lovett v. Lovett, 93 Fla. 611, 112 So. 768; Heisler v. Florida Mortgage Title & Bonding Co., 105 Fla. 657, 142 So. 242; Gray v. Standard Dredging Co., 111 Fla. 149, 149 So. 733; Allen v. Avondale Co., 135 Fla. 6, 185 So. 137.
Affirmed.
SEBRING, C.J., and TERRELL and CHAPMAN, JJ., concur.
THOMAS and HOBSON, JJ., dissent.
ROBERTS, J., not participating.