781 So.2d 527 (2001)
Richard SANDER, Appellant,
v.
T.B. BALL, III, Appellee.
No. 5D00-1741.
District Court of Appeal of Florida, Fifth District.
April 6, 2001.
*528 Gary A. Chernay of Law Offices of Gary A. Chernay, Atlanta, Georgia and Thomas V. Infantino of Infantino and Berman, Winter Park, for Appellant.
Clayton D. Simmons of Stenstrom, McIntosh, Colbert, Whigham & Simmons, P.A., Sanford, for Appellee.
COBB, J.
The issue raised by this appeal concerns the validity of an option agreement of unlimited duration, raising questions and arguments pertaining to the rule against perpetuities (in light of the various statutory enactments pertaining to that rule) and the rule against unreasonable restraint on the alienation of property. In September, 1997, Sander entered into an option agreement with Ball prepared by the latter's attorney. Ball paid to Sander a recited consideration for an option on certain real estate owned by the latter, a portion of which was prospectively subject to condemnation for a county road project. The option contained a clause stating:
The term of this option shall be from date hereof, and continuing until October 24, 1998. However, if Optionor has not received the condemnation proceeds as set forth in Section 3 prior to that date, this Option shall automatically be extended without action of either party until the date on which Optionor receives such funds from the condemning authorities.
The option agreement provided that it would inure to the benefit of the parties' heirs, successors and assigns, and also that time was of the essence.
On November 4, 1999, Sander filed a complaint against Ball for declaratory relief and slander of title. The complaint asked the trial court to declare the option null and void ab initio because the triggering event, the condemnation, might never occur. After non-jury trial, the circuit court ruled adversely to Sander, and granted Ball reformation of the agreement. The court found that the true intent of the parties was to give Ball an option for up to five years, with the option being triggered by a payment to Sander of condemnation proceeds by Seminole County.
It may well be, as suggested by the extensive arguments of the parties to this appeal, that there are profound doubts as to whether or not the Florida Legislature in its 1977 and 1988 enactments[1] clearly abolished the common law rule against perpetuities in respect to options in gross (as involved in the instant case). It now appears from section 689.225(7), Florida Statutes (2000), that such abolition of the common law rule was intended.[2] However, in view of the Florida Supreme Court opinion in Iglehart v. Phillips, 383 So.2d 610 (Fla.1980), we need not consider whether the common law rule against perpetuities[3] has any application to the instant dispute.
*529 In Iglehart, the court was faced with the question of whether a repurchase option contained as a covenant in a deed was void as violative of the rule against perpetuities or the rule against unreasonable restraint on alienation of property. The option was executed prior to the 1977 legislative enactment relating to the rule against perpetuities. The court concluded that it was not necessary to decide whether the option in that case was subject to the rule; instead, it was found that the repurchase option was more appropriately classified as an unreasonable restraint on the alienation of the subject property. The court enunciated the latter rule as follows:
Rule Against Unreasonable Restraints
The rule against unreasonable restraints on the use of property concerns restraints of such duration that they prevent the free alienation of property. While the rule against perpetuities invalidates interests which vest too remotely, the rule against unreasonable restraints is principally concerned with the duration of a restraint on the property rather than the time of vesting. The test which should be applied with respect to restraints on alienation is the test of reasonableness. The validity or invalidity of a restraint depends upon its long-term effect on the improvement and marketability of the property. Once that effect is determined, common sense should dictate whether it is reasonable or unreasonable.
Case law has in a number of situations identified reasonable and unreasonable restraints under the rule. It is generally agreed that an option restraint is reasonable if the option price is at market or appraised value, irrespective of the duration of the option. Restatement of Property § 413 (1944).
* * *

Although the law is clear that a repurchase option at market or appraised value for unlimited duration is not an unreasonable restraint, the situation changes substantially when the price is fixed in the option. It is the generally accepted rule that a fixed price repurchase option of unlimited duration, independent of the lease, is an unreasonable restraint. (Emphasis added).
383 So.2d at 614-615.
The court held that the repurchase option, which was for an unlimited period and for a fixed purchase price, was invalid and unenforceable as an unreasonable restraint on alienation. The circumstances in that case made it impossible to return the parties to the status quo, thereby prompting the court to provide equitable relief for the losing parties.
In the instant case, the option provides a set purchase price of $483,351.00 for the acreage or $33,000 per acre. The option continues by providing:
However, the total sum received by Optionor from the condemning authorities for the proposed new Airport Boulevard right of way shall be credited to Optionee as down payment toward the purchase price. It is anticipated that said payment will be in the range of $80,000.00-$100,000.00. Once the payment is received, the purchase price shall be recalculated, but in any event shall not be greater than $30,000.00 times the number of acres left after the taking. Acreage at closing will be determined by certified survey.
While the purchase price is not set in stone, there is a cap set on it. Such a *530 formula suffers from the same infirmity as a fixed price option of unlimited duration.
In the instant case the trial court, as a court of equity, could consider equitable relief, including reformation if appropriate, as to the unreasonable restraint infirmity. Iglehart, 383 So.2d at 617. The trial court ordered reformation, reforming the option to provide that it would run "until September 24, 2002. If the County has not condemned the subject property by that date, this option shall terminate."
Reformation is designed to correct a defective or erroneous instrument so that it reflects the true terms of the agreement which the parties actually reached. SunBank/North Florida, Nat. Ass'n v. Tuttle, 683 So.2d 1189 (Fla. 5th DCA 1996). "Reformation, at its essence, acts to correct an error not in the parties' agreement but in the writing which constitutes the embodiment of that agreement." Smith v. Royal Automotive Group, Inc., 675 So.2d 144 (Fla. 5th DCA 1996). Reformation is generally appropriate only to cure a mistake of fact, not a mistake of law, as to the legal effect of the parties' agreement. Heisler v. Florida Mort. Title & Bonding Co., 105 Fla. 657, 142 So. 242 (1932).
At trial the evidence established that Ball obtained the option in exchange for paying Sander $37,345 on a note in advance of the date the sum was due. According to Ball the triggering event of the option would be the county's condemnation of the property. The parties discussed when this might occur but "really didn't know." No date certain had been set although given the county's activity on the road building project "it is sometime in the very near future." According to Ball, when he and Sander entered into the project, he believed the condemnation would occur within five years although Ball admitted no time limit was discussed. According to Ball, the county's land acquisition schedule reflected a taking date within five years of the date of the option. Sander testified he believed the option was for one year and that the parties did not discuss what would happen if condemnation had not occurred during that period.
The county's project coordinator, Gifford, testified that he told Sander and Ball about the date for the taking as reflected on the project schedule. He had given Ball various dates for the scheduled taking but based on the current schedule the property would be condemned within a couple of years. Gifford admitted his conversations with Sander could have taken place after September 1997, when the option was executed.
Sander's testimony that the option was for one year is belied by the clear written terms of the option. However, Ball's admission that he and Sander did not discuss a time limit for the option is fatal to his request for reformation. The parties never reached an agreement on the term of the option. The trial court in designating a five year term by way of reformation was not reflecting the parties' understanding but rather was supplying an understanding. This is not the purpose of reformation. See Wedel v. American Elec. Power Service Corp., 681 N.E.2d 1122 (Ind.App.1997)(where the parties' true intentions are reflected by the written document which violates common law rule against perpetuities, court of equity will deny reformation).
The trial court erred in reforming the option so as to provide it with a five year duration. The option is void[4] as an unreasonable *531 restraint on alienation under Florida law. We accordingly reverse the final judgment and remand for further proceedings consistent with this opinion.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
GRIFFIN and ORFINGER, R. B., JJ., concur.
NOTES
[1] §§ 689.22(3)(a)7, Fla. Stat. (1979); 689.225, Fla. Stat. (1988).
[2] See Ch.2000-245, § 1, Laws of Florida (effective Dec. 31, 2000).
[3] Ball argues that the reformation of the option by the trial court was warranted pursuant to section 689.225(4), Florida Statutes (1997), the Florida Uniform Rule Against Perpetuities. Reformation under that provision, however, is applicable only in cases where a nonvested property interest becomes invalid under subsection (2) of that statute, and the statute, at subsection (5), specifically excludes a nonvested property interest arising out of a nondonative transfer (i.e., options) from its application.
[4] We further note that, unlike the situation in Iglehart, equity does not compel the losing party (Ball) to be awarded any form of restitution as a result of voiding the option since Ball gave little of value (early prepayment of an extant obligation) in obtaining the option.