130 So.2d 121 (1961)
COAST CITIES COACHES, INC., a Florida corporation, and John L. Williams, Appellants,
v.
Nelson L. WHYTE and Fred L. Hickling, Appellees.
No. 61-10.
District Court of Appeal of Florida. Third District.
May 11, 1961.
*122 Shutts, Bowen, Simmons, Prevatt & Boureau and William P. Simmons, Jr., Miami, for appellants.
L.J. Cushman, Joseph A. Perkins and S. Grover Morrow, Miami, for appellees.
CARROLL, CHAS., Judge.
In November of 1960 the appellee Nelson L. Whyte filed a complaint in equity against the appellants Coast Cities Coaches, Inc., and John L. Williams its sole stockholder, and joined as a defendant Fred L. Hickling whose interests were similar to those of Whyte. The complaint alleged that in 1952 Whyte and Hickling sold the stock of Coast Cities Coaches, Inc. (hereinafter referred to as the bus company) to Morris and Green by a contract under which the sellers were to be paid $120,000 for their stock plus the sum of $154,422.96 owed them by the company. Payment for the stock as well as the corporate indebtedness to the sellers was provided to be made by the bus company, out of a particular fund  "one half of the net earnings of the company computed annually, at the end of each calendar year."
A dispute between the parties over the meaning of "net earnings" was the subject of litigation.[1] No such earnings have been produced in any year since the sale in 1952, and nothing has been paid to Whyte and Hickling. The contract provided that until Whyte and Hickling were paid Whyte should continue as a director,[2] and that there should be no change in the "principal business of the company," or sale of the company's bus operation franchise or certificate of public convenience and necessity without Whyte's consent.[3] And the contract provided that the corporate stock should be held in escrow, pledged to secure the "repayment" of said amounts.[4]
*123 Following that initial sale, the corporate stock was sold twice. The last sale, to the appellant Williams, took place two years prior to the time this suit was filed. Williams' purchase of the stock and his operation of the company were open and unconcealed, and this case presents no charge to the contrary.
The complaint alleged the sale of stock to Williams was a breach of the contract,[5] and as basis for a prayer for rescission alleged that Williams "has had no substantial previous experience with operation of a transit company," and that therefore the sale of the stock to him impaired the franchise. It further alleged that the company and Williams were negotiating with the county commissioners, or someone representing them, to sell the franchise and certificate of public convenience and necessity to the county. By the prayer of the complaint the plaintiff sought (1) an injunction against sale of the franchise or certificate of public convenience and necessity to the county without Whyte's consent; (2) a construction of the contract as prohibiting sale of the stock to Williams; (3) construction of the contract as prohibiting sale of the franchise and certificate of public convenience and necessity without Whyte's consent; (4) rescission of the original sale contract, and delivery of the corporate stock to the plaintiff; and also (5) determination of the amounts due plaintiff and judgment therefor against the corporation.
The defendant Hickling answered, aligned himself with the plaintiff Whyte, and joined in his prayer for relief. Before answer of the other defendants, the plaintiff Whyte moved for summary decree, supporting the motion with his affidavit and a copy of minutes of a meeting of the Metropolitan Dade County Transit Authority held on September 1, 1960. In his affidavit Whyte stated he had not consented to sale of the franchise or the stock after the original sale; and that Williams had offered to sell and was attempting to sell the franchise and certificate to the Metropolitan Dade County Transit Authority. The minutes showed Williams had informed the Authority that the bus company was for sale, and that at the request of the Authority he had consented to submit a financial statement of the company and a balance sheet for review by the Authority.[6] Also attached to the motion *124 for summary decree were pages 11 and 12 of a June 1960 report of a Transportation Advisory Committee. The substance of that was a general discussion of the possibility and feasibility "of acquisition by the county of all intra-county mass transportation facilities and unification of them into a single inter-connected, county-wide system."
In opposition to the motion for summary decree, two affidavits were filed on behalf of the defendants, the bus company and Williams. An affidavit by Williams stated he had owned all of the stock of the company and operated the bus company since November of 1958; that the plaintiff Whyte had been a director with access to the books and records and had examined them when he requested; and that there had been no net earnings. The other affidavit, by an attorney for the defendants, recited that the contract did not prohibit sale of the stock, and that no sale thereof had been made in violation of the contract; that his firm as the designated escrow agent had held the stock, including the present certificate to Williams; that Williams acquired the stock November 5, 1958, in a sale which was approved by the Florida Railroad and Public Utilities Commission, and that no objection had been made thereto; and that by having attended the directors' meeting in May of 1959 Whyte knew Williams had bought the stock and was operating the bus company.
After hearing, the trial court entered a summary final decree which enjoined sale of the franchise and certificate of public convenience and necessity by the transfer of the corporate stock or otherwise without Whyte's consent, while Whyte and Hickling remained unpaid. Then, the decree effected and granted rescission, not only of the 1958 sale of the stock to Williams, but of the initial sale of 1952, by terminating the escrow and ordering unconditional redelivery of the corporate stock to the original sellers Whyte and Hickling. The defendants Coast Cities Coaches, Inc., and Williams appealed.
The several questions presented may be reduced to (1) whether it was error to enjoin sale to the county, and (2) whether the court erred in rescinding the two prior sales. We hold the court was eminently correct in enjoining sale to the county, but committed error in terminating the escrow of the stock and ordering it to be redelivered to the plaintiff.
The injunction is upheld on the ground that sale of the stock to the county would violate two provisions of the contract. Concededly, the sale to the county would result in destroying the identity of the bus company and merging or blending it into a county-wide transportation system. Clearly that would "change the principal business of the company as it now exists"  which was expressly prohibited  and would destroy the opportunity for the bus company to derive "net earnings" from operation in the future, as the provided means for paying off the indebtednesses to Whyte and Hickling. Also, sale to the county would violate the provision against disposition of the franchise and certificate which was expressly prohibited by the contract unless Whyte should consent. Sale of the corporate stock was not prohibited by the contract, and there was no complaint to the sale to Williams until he proposed to sell out to the county. A sale to the county would be vastly different from a sale to a new individual owner-operator. So long as the bus company continues in business, without regard to who owns the stock, the original sellers have their chance to be paid out of net earnings. But it was made clear in this case that independent operation of the company would be ended, if sold to the *125 county. Therefore, a sale of the corporate stock to the county, though the contract did not prohibit sale or change of ownership of the stock, inevitably would result in separating and divesting the franchise and certificate of convenience and public necessity from the company, and that is what was provided against by the contract.[7] The injury or loss which that provision of the contract was designed to obviate would be irreparable, and adequate damages unrecoverable.
The allegations relied on for rescission were insufficient, and no basis for it was established on the motion for summary judgment. Laches were indicated. See C.F. & A.C. Mizell v. I.H. & W.L. Watson, 57 Fla. 111, 49 So. 149, 151. A plaintiff's motion for summary judgment before answer should not be granted when it appears an answer may raise a material issue. Olin's v. Avis Rental Car System of Florida, Fla.App. 1958, 105 So.2d 497, 498-499; Stuart Investment Co. v. Westinghouse Electric Corp., D.C.D.Neb. 1951, 11 F.R.D. 277; 6 Moore's Federal Practice, § 56.07, p. 2044. Moreover, indispensable parties to each of the two contracts rescinded were not before the court. Martinez v. Balbin, Fla. 1954, 76 So.2d 488; 3 Moore's Federal Practice, § 19.10. Morris and Green, parties to the original sale in 1952 were joined but not served, and were dismissed as unnecessary. The 1958 sale to Williams was set aside without his seller being made a party. In a proceeding to rescind a contract, the parties thereto should be before the court.[8] No offer was made to place Williams in statu quo, if that were possible. Rescission calls for placing the parties in statu quo, and where restoration is not or can not be made, such relief is generally denied.[9] Therefore, the provision of the contract to hold the stock in escrow should be observed and the escrow restored and continued.
For the reasons stated, the decree appealed from is affirmed as to the injunction against sale to the county of the assets or corporate stock of the bus company without Whyte's consent while the indebtednesses to Whyte and Hickling remain unpaid; but we reverse the decree to the extent that it rescinds the prior stock sale contracts and *126 provides for termination of the escrow and delivery of the corporate stock to plaintiff.
Affirmed in part and reversed in part.
HORTON, C.J., and PEARSON, J., concur.
NOTES
[1] See Coast Cities Coaches v. Whyte, Fla. App. 1958, 102 So.2d 848.
[2] "It is understood and agreed that until the obligations described in paragraphs `1' and `2' are paid in full that Nelson L. Whyte shall be retained as a member of the Board of Directors of the company and that he shall have complete access at all reasonable times to the books and records of the company."
[3] "It is further agreed that as long as said obligations remain unpaid in whole or in part, that the company will not do any of the following without the consent of Nelson L. Whyte: (a) Change the principal business of the company as it now exists, which is the rendering of transportation service by motor bus to certain areas of Dade and Broward Counties, Florida. * * * (d) Sell, transfer, lease or impair any operating franchise or certificate of public convenience and necessity which is essential in the operation of the business. * * *"
[4] "In consideration of the obligations undertaken by the ultimate purchaser pursuant to this Agreement, all of the outstanding stock and certificates evidencing their ownership or control of all of the capital stock of the Company, and a new stock certificate shall be issued by the company to the ultimate purchaser for the one hundred twenty (120) shares of stock agreed to be purchased hereunder. The said new stock certificate to be issued to the purchaser shall thereupon be pledged as collateral security for the repayment of all the indebtedness set forth in paragraphs 1 and 2 above and the same shall be delivered to the law firm of Shutts, Bowen, Simmons, Prevatt & Julian as attorneys for the stockholders to be held in escrow for them pursuant to the terms of this Agreement."
[5] The contract contained no express provision against sale of the corporate stock, but indirectly it forbade sale of the corporate stock if the sale necessarily would result in bringing about something expressly barred by the contract, such as a "change of the principal business," or a disposition of the franchise in the sense of divesting or separating it from the company.
[6] The portion of the minutes of the September 1, 1960, meeting of the Metropolitan Dade County Transit Authority, which concerned the Coast Cities Coaches, Inc. was the following: "Mr. John Williams, President of Coast City Coaches, Incorporated, appeared before the Authority at 1:30 PM and [was] asked whether or not (1) He was interested in selling his Company; (2) Whether or not his company would be interested in a county-wide franchise.

"To the first question Mr. Williams replied, his company was for sale and to the second question he replied that, his company was not in a position to bid for a county-wide franchise.
"Further questioning elicited the information that the asking price for this property was $850,000.00. A lengthy discussion followed during the course of which the members attempted to determine what they would receive for the asking price. It was pretty well determined that the price was in the neighborhood of $400,000 greater than the book value of the company.
"The members asked Mr. Williams to submit a detailed financial statement and balance sheet for review. Mr. Williams agreed that he would do this."
[7] "If a purchaser of a business promises to pay therefor out of profits yet to be made, there is an implied promise to keep the business going in good faith; * *" 3 Corbin, Contracts, § 570, p. 344 (1960).

"* * * A negative promise may be made by specific promissory words of forbearance, or it may be inferred from words that are not in definite promissory form or from other manifestations of intention not put into the form of words at all. The enforcement of a negative promise by injunction should not be made in the least to depend upon its form. The remedy is frequently used to enforce express promises in negative form; and it should be equally available for the enforcement of promises that are made by implication and are clearly established." 5 Corbin, Contracts, § 1205, pp. 854-55 (1960). See 3 Williston, Contracts, § 670, p. 1926 (1958); Adalex Laboratories v. Krawitz, Okl. 1954, 270 P.2d 346, 350. See also Parev Products Co. v. I. Rokeach & Sons, 2 Cir., 1941, 124 F.2d 147, 149; Nevada Half Moon Mining Co. v. Combined Metals Reduction Co., 10 Cir., 1949, 176 F.2d 73, 75; I Restatement, Contracts, § 236(b); 17 Fla.Jur., Injunctions, § 49; 17 C.J.S. Contracts § 328.
[8] See Indian River Mfg. Co. v. Wooten, 48 Fla. 271, 37 So. 731; Troublefield v. Troublefield, 60 Fla. 387, 53 So. 518; Liverpool, London & Globe Ins. Co. v. City of Rockledge, 97 Fla. 644, 121 So. 807; Cline v. Cline, 101 Fla. 488, 134 So. 546; Cracowaner v. Worthington, 101 Fla. 756, 135 So. 304; Coral Realty Co. v. Peacock Holding Co., 103 Fla. 916, 138 So. 622; Heisler v. Florida Mortgage Title & Bonding Co., 105 Fla. 657, 142 So. 242; W.F.S. Co. v. Anniston Nat. Bank of Anniston, Ala., 140 Fla. 213, 191 So. 300; 5 Fla.Jur., Cancellation, Reformation & Rescission of Instruments, § 47.
[9] See Lang v. Horne, 156 Fla. 605, 23 So.2d 848, 853; Steak House v. Barnett, Fla. 1953, 65 So.2d 736, 738; 12 Am.Jur., Contracts, §§ 451, 452; 7 Fla.Jur., Contracts, § 182.