178 So.2d 703 (1965)
COAST CITIES COACHES, INC., a Florida corporation, Appellant,
North Dade Transit Company, Inc., Edna R. Hickling, as Administratrix of the Estate of Fred L. Hickling, Deceased, and Nelson Whyte, Intervening Appellants,
v.
DADE COUNTY, a Political Subdivision of the State of Florida, Appellee.
Nos. 33971, 33977.
Supreme Court of Florida.
July 7, 1965.
Rehearing Denied October 21, 1965.
*705 Shutts, Bowen, Simmons, Prevatt, Boureau & White and Jeptha P. Marchant, Miami, for Coast Cities Coaches, Inc., appellant.
Thomas H. Anderson and Anderson & Nadeau, Miami, for North Dade Transit Company, Inc., S. Grover Morrow, Miami, for Edna R. Hickling, as Administratrix of the Estate of Fred L. Hickling, deceased, and Marchant & Perkins, Miami, for Nelson L. Whyte, intervening appellants.
Thomas C. Britton, County Atty., and Clyde Trammell, Jr., Asst. County Atty., for appellee.
McCORD, GUYTE P., JR., Circuit Judge.
This case is on appeal from a summary final declaratory decree of the Circuit Court of Dade County construing a controlling provision of the Florida Constitution.
The cause arose in the Circuit Court by a complaint for declaratory decree filed September 18, 1964, wherein appellee, Dade County, plaintiff below, sought a decree declaring whether Dade County may extend its bus transportation service in competition with service provided by the appellant, defendant below, Coast Cities Coaches, Inc., (hereinafter sometimes referred to as Coast Cities) without obligation to compensate appellant, and if such an obligation exists, a declaration as to the elements and measure of same. Coast Cities is a motor carrier operating in local transit, in the northern part of Dade County and extending into downtown Miami. It operates under a certificate of public convenience and necessity issued by the Florida Public Utilities Commission under Chapter 323, Florida Statutes.
Motion to dismiss was filed by Coast Cities and thereafter Dade County filed a motion for summary final decree and pursuant to due notice to all parties, a hearing on both motions was held before the chancellor on October 30, 1964. By order dated November 18, 1964, the Circuit Court granted petitions to intervene of Edna R. Hickling (as administratrix of the estate of Fred L. Hickling, deceased), Nelson L. Whyte, and North Dade Transit Company, Inc., (hereinafter sometimes referred to as Hickling, Whyte and North Dade, respectively). Hickling and Whyte have a contractual interest in Coast Cities, and North Dade, like Coast Cities, is a motor carrier operating in the northern part of Dade County under certificate of public convenience and necessity issued by the Florida Public Utilities Commission.
On December 30, 1964, the court below entered summary final declaratory decree wherein it denied the motion to dismiss of Coast Cities and ruled that Dade County possesses the power, privilege and right to extend its bus transportation system into and through part, or all, of the area in which Coast Cities is presently operating in Dade County and may do so in competition with Coast Cities without any obligation to compensate it for such action.
We must consider initially a question of procedure  whether or not a summary *706 declaratory decree can be entered on plaintiff's motion therefor prior to the defendant filing answer. This is answered in the affirmative, with the qualification that to grant same it must be clear from the pleadings, depositions, admissions and affidavits on file that there can be no genuine issue as to any material fact and the moving party is entitled to the declaration sought as a matter of law. Rule 1.36(a), Florida Rules of Civil Procedure, 30 F.S.A., provides, in part, as follows:
"(a) For Claimant. A party seeking to recover upon a claim, counterclaim or cross-claim or to obtain a declaratory judgment or decree may, at any time after the expiration of 20 days from the commencement of the action * * * move with or without supporting affidavits for a summary judgment or decree in his favor upon all or any part thereof." (Emphasis supplied)
The foregoing is patterned after and is substantially the same as Federal Rule of Civil Procedure 56(a). The federal decisions uniformly hold that a plaintiff need not wait for a defendant to file answer before moving for summary decree. See Annotation, 85 A.L.R.2d 825. Although this court has not previously ruled on this question, the First and Third District Courts of Appeal have had the question before them and have ruled as above stated. See Olin's, Inc. v. Avis Rental Car System, Fla.App., 105 So.2d 497; Goldstein v. Florida Fishermen's Supply Co., Fla.App., 116 So.2d 453; Lehew v. Larson, Fla.App., 124 So.2d 872, 85 A.L.R.2d 821; Coast Cities Coaches, Inc. v. Whyte, Fla.App., 130 So.2d 121. Initially, both the federal rules and the Florida rules specifically required the filing of an answer before a motion for summary judgment or decree could be filed, but both were subsequently amended to require only the expiration of 20 days from the commencement of the action. Such a motion is granted with caution, however.
The appellants next contend that this is not a case in which Dade County has any doubt as to its power and authority; that a lack of such doubt is demonstrated by its filing a complaint and then moving for summary decree before answer is filed and therefore declaratory decree will not lie. We find no merit to this contention. Dade County's complaint establishes a sufficient predicate for its doubt as to its power under its Home Rule Charter to extend its bus transportation system into an area of Dade County presently served by Coast Cities. Its right to do so is disputed by appellants. Its filing of the motion for summary decree before answer does not of itself show lack of doubt, though Dade County strongly contends its view of the law is correct. Dade County is not required to first exercise this disputed power and thus precipitate legal action. Intervenor, North Dade, cites Halpert v. Olesky, Fla., 65 So.2d 762 in support of its position, but said case is not parallel to the situation here. Halpert was a suit for declaratory decree predicated on a lease, but no doubt as to construction of the lease was alleged by either party. The only dispute was as to questions of fact and the only relief sought was damages. Plaintiff there simply attempted to convert a legal action for damages for breach of a lease into a suit for declaratory decree.
The next question for consideration is whether or not it was incumbent upon the chancellor to allow the intervening defendants an opportunity to file affidavits in opposition to the motion for summary decree and be heard prior to his ruling thereon. Intervenors contends such failure was a denial of due process. It is settled law, however, that an intervening defendant is bound by the record made at the time that he intervenes and must take the suit as he finds it unless the court, in its discretion, otherwise orders. See Krouse, et al. v. Palmer, et al., 131 Fla. 444, 179 So. 762. *707 Florida Rule of Civil Procedure 3.4, 31 F.S.A. provides as follows:
"Anyone claiming an interest in pending litigation may at any time be permitted to assert his right by intervention, but the intervention shall be in subordination to, and in recognition of, the propriety of the main proceeding, unless otherwise ordered by the court in its discretion."
Intervenor, North Dade, by its petition, merely sought intervention. Intervenors, Whyte and Hickling, sought intervention "with the same, and equal, status as the present defendant." The court's order allowing intervention granted the petitions to intervene and allowed the intervening defendants time within which to file defensive pleadings, without comment as to their status as defendants. That the time of entry of this order, and the previous filing of the motion to intervene, the court had already heard the motion for summary decree and had the same under advisement. The order allowing intervention was entered on November 18, 1964. The final summary declaratory decree was not entered until December 30, 1964.
It does not appear from the record that the intervening defendants, in the interim, made any effort to be heard on the already submitted motion for summary decree, though they had 40 days after their intervention within which to do so. They apparently considered they were bound by the state of the proceedings at the time they came into the case. The chancellor also, obviously, considered that he had allowed their intervention only on such basis, as he so stated in his final summary decree. There is nothing in the order allowing intervention indicating affirmatively that the chancellor intended to extend its scope beyond that normally allowed by Rule 3.4 and it is conclusive from his final decree that he did not so intend. Furthermore, unless it appears from the record and all of the arguments that have been made, that there can be a genuine issue as to a material fact, it would be a time-consuming, expensive and useless procedure to now send this cause back for intervenors to be heard by the chancellor on this question.
We pass now to the merits of the case. The able chancellor below correctly ruled that Dade County possesses the power, privilege and right to extend its bus transportation system into and through part, or all, of the area within which Coast Cities is presently operating in Dade County, and that it may do so in competition with Coast Cities without any obligation to compensate for such action.
We have carefully considered the record that was before the chancellor and the briefs and arguments here. There is no genuine issue as to a material fact and the question is one only of law.
Appellants first contend that rights conferred by a certificate of public convenience and necessity issued under state law may not be impaired by Dade County under its Home Rule Constitutional Amendment, Article VIII, Section 11, Constitution of Florida, F.S.A. This court has heretofore ruled to the contrary insofar as operation by Dade County of a public transportation system may constitute impairment of a certificate. In State v. Dade County, Fla., 142 So.2d 79, this court said:
"An adequate public transportation system, according to the record in this case and as a matter of common knowledge, is necessary and essential in the development, improvement and growth of great metropolitan areas such as that embraced within the limits of the County. One of the obvious purposes of metropolitan government and a principle inherently embodied in the constitutional amendment and the Home Rule Charter is the development of public services and utilities having county-wide application and uniform operation. * * *"
* * * * * *

*708 "* * * The Florida Railroad and Public Utilities Commission has not been delegated  nor in our opinion did the legislature intend that it should have  jurisdiction over publicly owned and operated transportation systems. As we have heretofore stated the Home Rule Charter authorizes the Board to provide and operate this public transportation system and vests in it `all implied powers necessary and proper to carry out such powers.' This includes the power to regulate the operation of a public transportation system and to fix fares and routes of service. This being true, the Railroad and Public Utilities Commission has no jurisdiction over this transportation system operated by Dade County either under Section 323, Florida Statutes, F.S.A., or otherwise."
Dade County, under the Dade County Home Rule Amendment, supra, and under the Home Rule Charter adopted by vote of the people pursuant to such constitutional amendment, has full power to freely extend its public transportation system within the county, regardless of whether or not such may infringe upon a competitor operating under a certificate of public convenience and necessity issued by the Florida Public Utilities Commission.
The Dade County Home Rule Amendment, supra, provides, in part as follows:
"(1) The electors of Dade County, Florida, are granted power to adopt, revise, and amend from time to time a home rule charter of government for Dade County, Florida, under which the Board of County Commissioners of Dade County shall be the governing body. This charter:
* * * * * *
(b) May grant full power and authority to the Board of County Commissioners of Dade County to pass ordinances relating to the affairs, property and government of Dade County * * * and do everything necessary to carry on a central metropolitan government in Dade County."
The Dade County Home Rule Charter adopted by the electors of Dade County provides, in part, as follows:
"A. The Board of County Commissioners shall be the legislative and governing body of the county and shall have the power to carry on a central metropolitan government. This power shall include but shall not be limited to the power to:
* * * * * *
2. Provide and operate * * * bus terminals * * * and public transportation systems, * * *
* * * * *
14. Regulate, control, take over, * * * or itself operate * * * public transportation systems, * * *"
In addition, the aforesaid Home Rule Amendment contains the following provision upon which appellants rely in contending that Dade County is here restricting the jurisdiction of the Florida Public Utilities Commission:
"(7) Nothing in this section shall be construed to limit or restrict the power and jurisdiction of the Railroad and Public Utilities Commission * * *."
The Public Utilities Commission does not have jurisdiction over transit operations conducted by counties or cities within the territorial limits of such counties or cities. See State v. Dade County, supra; City of St. Petersburg v. Carter, Fla., 39 So.2d 804. Such operations on the one hand and those conducted by motor carriers under certificates of public convenience and necessity issued by the Public Utilities Commission on the other, are in separate spheres, with each deriving its authority from the Constitution, via the electors of Dade County in one instance (Dade County Home Rule Charter), and the legislature in the other. Dade County may not encroach upon the *709 powers and jurisdiction of the Public Utilities Commission in its regulatory field and that commission may not encroach upon the powers of Dade County to, itself, operate a unified transportation system.
Appellants contend that the action of Dade County, in paralleling Coast Cities lines, will impair that motor carrier's business to such an extent as to cause it to go out of business; that such will amount to a taking of its property without compensation in violation of the due process clause of the federal and state constitutions. If Dade County were taking the physical properties of Coast Cities, their contention would of course, be sound. But such is not the case. At most, Coast Cities will lose revenue as a result of the competition and it could, conceivably, lose so heavily that it must go out of business. But loss of business, through competition with a governmental agency, is not a taking of property in violation of the Fourteenth Amendment to the United States Constitution and Section 12 of the Declaration of Rights of the Florida Constitution, F.S.A. This was settled some years ago. In 1902, the Supreme Court of the United States, in Skaneateles Water Works Company v. Village of Skaneateles, 184 U.S. 354, 22 S.Ct. 400, 46 L.Ed. 585, held that a village had the right to install and operate its own water works system in competition with a private water company without compensation, therein stating:
"Its action may have seriously impaired the value of the plaintiff's property, but it has taken none of it, and such decrease in value, caused by the village exercising its right to build and operate its own plant, furnishes, under the facts in this case, no foundation for the plaintiff's claim."
* * * * * *
"The property of the plaintiff remains wholly untouched. Its value has decreased because the village no longer takes water from it, and the inhabitants will probably also take their supply from the village works, but the plaintiff's property has not been taken, as that term is understood in constitutional law. * * *"
Further, the Supreme Court of the United States, in Hegeman Farms Corporation v. Baldwin, 293 U.S. 163, 55 S.Ct. 7, 79 L.Ed. 259, said:
"* * * The Fourteenth Amendment does not protect a business against the hazards of competition."
See also Puget Sound Power and Light Co. v. City of Seattle, 291 U.S. 619, 54 S.Ct. 542, 78 L.Ed. 1025, and Tennessee Electric Power Company v. T.V.A., 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543, 119 A.L.R. 432.
Chapter 323, Florida Statutes, F.S.A., empowers the Florida Public Utilities Commission to grant authority to and regulate motor carriers. The power of that commission under said chapter is not diminished by the Dade County Home Rule Amendment and Charter, as Dade County, in the operation of its transit system, is not subject to said commission's jurisdiction. Likewise, the right of Coast Cities to operate under its certificate of public convenience and necessity issued by said commission, is undiminished by the action of Dade County here contemplated. Said motor carrier is free to continue operation under its certificate just as before. There is no taking here of Coast Cities' property by Dade County. Coast Cities gives up neither its physical property nor its certificate  both will remain intact.
Appellants also have advanced an argument that Dade County is discriminating against Coast Cities by refusing to purchase its operation, it having previously purchased the operations within the county of several other transit companies. They contend that Dade County's original plan, under its Home Rule Charter and an ordinance adopted establishing a Metropolitan Dade County Transit Authority for the county, was to acquire a county-wide transportation system by purchasing the existing *710 local transit companies; that the county proceeded with this plan and bought the larger of the transit companies (Miami Transit Company, Miami Beach Railway Company, South Miami Coach Lines, Inc., and Keys Transit Company), but has now determined that instead of purchasing Coast Cities, it will move into Coast Cities territory, parallel its lines, operate at a loss if necessary, and thereby attempt to run Coast Cities out of business. We are not persuaded that this contention of discrimination has merit. Under this theory, a county could never purchase anything, excluding purchases by competitive bidding, without also purchasing the same thing from everyone else in the county who might have it to sell. In purchasing properties, each party must necessarily agree to all of the terms of sale. There is no way the court could coerce the parties' independent judgments in reaching an agreement as to a sale price and as to other conditions of a sale. There is no unlawful discrimination here against Coast Cities by Dade County.
Appellants contend that they can and will deny the county's findings recited in its resolution authorizing the county attorney to institute this suit, said resolution being attached as an exhibit to the complaint. Said findings are to the general effect that it is necessary that the county move its transportation operations into the territory which is presently served by Coast Cities; that the service of Coast Cities is unsatisfactory to meet the needs of the area. These findings, however, are not material to the question involved here. The court cannot judge the wisdom of such action by the county officials, but can only determine whether or not same is unlawful or unconstitutionally infringes upon the rights of others. As heretofore stated, Dade County has the power to take this action and there is no infringement upon constitutional rights of Coast Cities. There is no legal requirement that a county government, authorized by its charter to itself conduct a public transportation system, prove public convenience and necessity as a prerequisite to expansion of such system within the county. Although this contemplated action of Dade County probably will fall with harsh impact upon a certificated motor carrier operating under the jurisdiction of the Florida Public Utilities Commission, the law affords it no protection from such competition. It is damnum absque injuria.
It does not appear that there can be any material issues of fact presented in this case, the question being purely a question of law.
Affirmed.
THORNAL, C.J., and ROBERTS, DREW, O'CONNELL and CALDWELL, JJ., concur.
BARNS, J. (Retired), dissents with opinion.
BARNS, PAUL D., Justice (Ret.), (dissenting).
Dade County brought a suit for a declaratory decree against Coast Cities Coaches, Inc. alleging that the Coast Cities Coaches "has been since 1948 operating a bus transportation system within a territory located within Dade County and elsewhere under and pursuant to a certificate or certificates of public convenience and necessity granted by the Florida Public Utilities Commission", issued by the Commission under Chapter 323, Florida Statutes. (The word "elsewhere" has reference to its bus inter-county service between Broward and Dade County.)
Dade County's complaint further alleges that Dade County "owns and operates a bus transportation system within Dade County which presently serves a minor part of the territory served by Coast Cities Coaches as well as many other areas of Dade County"; that Dade County "has concluded that the public interest would best be served by an extension or extensions of its bus transportation system into and *711 throughout all of the area within which the defendant corporation is presently operating".
Plaintiff-county further alleges that it "believes it presently possesses the lawful power, privilege and right under and by virtue of the Home Rule Charter to extend its bus transportation system as contemplated in competition with the system operated by the defendant corporation without any obligation to compensate the defendant corporation, but plaintiff is in doubt as to its power, privilege and right because defendant disputes such power, privilege and right"; that plaintiff is ready to extend its system as stated but "such extension would materially affect the revenues of the defendant corporation". Plaintiff prays that the Court will enter a decree declaring whether or not Dade County (1) may extend its bus transportation service in competition with the service of the defendant (2) without obligation to compensate the defendant.
Motion to dismiss was filed by Coast Cities Coaches and thereafter Dade County filed a motion for summary final decree and a hearing on both motions was held before the chancellor on October 30, 1964. Thereafter, by order dated November 18, 1964, the Circuit Court granted petitions to intervene of Edna R. Hickling, as administratrix of the estate of Fred L. Hickling, deceased, Nelson L. Whyte, and North Dade Transit Company, Inc., (hereinafter sometimes referred to as Hickling, Whyte and North Dade, respectively). Hickling and Whyte have a contractual interest in Coast Cities Coaches and North Dade, like Coast Cities Coaches, is a motor carrier operating in the northern part of Dade County under certificate of public convenience and necessity issued by the Florida Public Utilities Commission.
On December 30, 1964, pursuant to the hearing of October 30, 1964, the court entered summary final declaratory decree wherein it denied the motion to dismiss of Coast Cities Coaches and entered a final decree that Dade County possesses the power, right and privilege to extend its bus transportation system into and through part, or all, of the area in which Coast Cities Coaches is presently operating in Dade County and may do so in competition with Coast Cities Coaches without any obligation to compensate it for such action. The intervening defendants have not been heard on their motions to dismiss.
The final decree held that:
"3. Under Article 8, Section 11, Florida Constitution, the Home Rule Charter of Dade County, and the Laws of Florida, the plaintiff, DADE COUNTY, possesses the lawful power, privilege and right to extend its bus transportation system into and through part or all of the area within which the defendant, COAST CITIES COACHES, INC., is presently operating in Dade County, Florida, and may do so in competition with the said defendant corporation without any obligation to compensate in any manner the said defendant corporation for such action. See State v. Dade County, 142 So.2d 79."
The cited case of State v. Dade County, supra, was an appeal from a final decree validating $9,000,000 of transit system revenue bonds, most of which was to be used in the purchase of four bus transportation systems operating under certificates of public convenience and necessity granted by the Florida Railroad and Public Utilities Commission, Chapter 323, Florida Statutes. The Court held:
"* * * One of the obvious purposes of metropolitan government and a principle inherently embodied in the constitutional amendment and the Home Rule Charter is the development of public services and utilities having county-wide application and uniform operation.

*712 "* * *
"The Florida Railroad and Public Utilities Commission has not been delegated  nor in our opinion did the legislature intend that it should have  jurisdiction over publicly owned and operated transportation systems. As we have heretofore stated, the Home Rule Charter authorizes the Board to provide and operate this public transportation system and vests in it `all implied powers necessary and proper to carry out such powers.' This includes the power to regulate the operation of a public transportation system and to fix fares and routes of service. This being true, the Railroad and Public Utilities Commission has no jurisdiction over this transportation system operated by Dade County either under Section 323, Florida Statutes, F.S.A., or otherwise."
State v. Dade County, supra, did not involve the impairment of a franchise of bus system operating by authority of a certificate of public necessity and convenience granted by the Public Utilities Commission, and the opinion is binding only on what is germane to the matter then before the court. As stated in 1 B, Moore's Federal Practice, 2nd Ed. (1963) § 0.402 [2], p. 111:
"* * * We have been admonished by the Supreme Court, as early as Cohens v. Virginia, not to disregard the maxim that
`* * * general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the court is investigated with care and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated.' Cohens v. Virginia (1821) [19 U.S. 264,] 6 Wheat 264, 399-400, 5 L.Ed. 257, 290. (per Chief Justice Marshall)."
A question presented on this appeal is whether the lower court erred in holding, sub silentio, that no answer which the Coast Cities Coaches might properly serve could present a genuine issue of a material fact. The rule of law applicable to a hearing on a plaintiff's motion for a summary judgment before the defendant is required to serve an answer is well stated in Olin's v. Avis Rental Car System of Florida, Fla. App., 105 So.2d 497:
"When a trial court has for consideration a plaintiff's motion for summary judgment before the defendant has answered, the summary judgment should not be granted unless it is clear that an issue of material fact can not be presented. See Moore's Federal Practice, § 56.07, p. 2044. Cf. Ludlow Mfg. & Sales Co. v. Textile Workers Union, D.C.Del., 108 F. Supp. 45, 51.
"In dealing with such a question under the equivalent Federal Rule 56, 28 U.S.C.A., this point was elaborated on in Stuart Inv. Co. v. Westinghouse Electric Corp., D.C.Neb., 11 F.R.D. 277, 280, as follows:
"`* * * But although a motion by a claimant for summary judgment, served before the service of answer to his complaint may not be denied on the ground that it is necessarily and inevitably tendered too early, the general cautions against the allowance of such motions mentioned in the preceding paragraph must be kept in view. And within their teaching, a court must not grant a summary judgment upon motion therefor tendered before the service of an answer, unless in the situation presented, it appears to a certainty *713 that no answer which the adverse party might properly serve could present a genuine issue of fact.'"
The plaintiff's motion for a summary decree is not supported by any affidavits, depositions or admissions and it seems to rely on the fact that Dade County has been enabled to operate and maintain a bus system in all or any part of Dade County; that no facts could be presented to show that its proposed extension of its bus system (as stated in its complaint) could preclude such action. Coast Cities Coaches franchise is a property right which is exercised under governmental regulations; it is not wholly intra-county, its operations are in and beyond the limits of Dade County, viz., Dade County and Broward County.
The right of Dade County to operate its bus system in unrestricted competition with the franchise of Coast Cities Coaches is not conclusive by the mere fact of it being authorized to engage in such business without a certificate of convenience and necessity from the state utilities commission.
The complaint falls well within the practice permitting suits seeking declaratory decrees and Coast Cities Coaches motion to dismiss was not well founded.
The lower court by order allowed Edna R. Hickling, as administratrix, and Nelson L. Whyte to intervene as defendants and, also, North Dade Transit Company to intervene as a defendant; the order granting leave to intervene was "with leave to file such defensive pleadings as they may decide." The intervening defendants Hickling and Whyte appear to have intervened pro interesse suo, while North Dade Transit Company's intervention was more intrusive and not pro interesse suo. Hickling and Whyte's interest appears more fully from the facts recited in Coast Cities Coaches, Inc. v. Whyte, Fla., 130 So.2d 121.
Rule 3.4 Rules of Civil Procedure, provides:
"Anyone claiming an interest in pending litigation may at any time be permitted to assert his right by intervention, but the intervention shall be in subordination to, and in recognition of, the propriety of the main proceeding, unless otherwise ordered by the court in its discretion."
The foregoing rule is the same as Rule 37, Federal Equity Rules of 1912, except for the added words "unless otherwise ordered by the court in its discretion." Rule 3.4, supra, is the same as Section 9, "1931 Chancery Act"; § 63.09, Florida Statutes, (deleted 1951).
It appears that when the court's order permitting intervention specifically provided that the intervenors might "file such defensive pleadings as they may decide" the application of the "subordination" clause and the "propriety" clause of the rule may have been obviated. For construction of these clauses, see 4 Moore's Federal Practice, 2nd Ed., § 24.16[1] [3], p. 108, 114.
The complaint is sufficient in law as to Coast Cities Coaches and intervenors Hickling and Whyte are parties pro interesse suo. North Dade Transit Company is an intrusive intervention grounded on a potential development of a common question of law of fact as to which the Transit Company wanted to be heard. Under these circumstances, it might be good discretion on the part of the intervenors to withdraw their motions to dismiss so as to preclude the lower court granting dismissal of the action as to them, which would leave the action still pending as to Coast Cities Coaches.
I would reverse for the want of due process.